# 2003 DTA 89

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN, PANEL I**

LUIS ANGEL CRUZ CRUZ (MENOR DE EDAD), REPRESENTADO POR SU DEFENSOR JUDICIAL, HAROLD D. VICENTE GONZALEZ
Apelante

v.

MERRILL LYNCH PIERCE FENNER & SMITH, INC., *ET ALS*.
Apelados

------------------------------------

ANGEL RAFAEL CRUZ COLON, *ET ALS*.
Apelantes

v.

HECTOR ARROYO VELEZ, *ET ALS*.
Apelados

Núms. Cons. KLAN-01-00282 / KLAN-01-00434

San Juan, Puerto Rico, a 16 de mayo de 2003

Panel integrado por su Presidenta, la Juez Fiol Matta,
y los Jueces González Rivera y Rivera Martínez

González Rivera, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En los recursos consolidados en el epígrafe, comparece Luis Angel Cruz Cruz, un incapacitado representado por su defensor judicial, licenciado Harold Vicente. En el recurso KLAN-01-00282 solicitan la revisión y revocación de una sentencia parcial emitida el 22 de enero de 2001. Mediante el referido dictamen, el

Tribunal de Primera Instancia, Sala Superior de San Juan, determinó que durante la vista celebrada el 17 de agosto de 1999 se perfeccionó un contrato de transacción con la aprobación del defensor judicial, Smith Barney, Inc. (en adelante S.B.), Merrill Lynch Pierce Fenner & Smith, Inc. (en adelante M.L.), la Procuradora Especial de Relaciones de Familia y el tribunal apelado.

El defensor judicial invoca como fundamento de revocación que erró el foro de instancia al: (1) declarar *"No Ha Lugar"* la moción de reconsideración y sostener que su orden del 1 de octubre de 2000, en la cual determinó que no se perfeccionó un contrato de transacción, no advino final y firme; (2) entender que se perfeccionó un contrato de transacción; y (3) ordenar que se debía consignar intereses sobre el principal en atrasos solamente sobre la cantidad de $28,358.34 a partir del 1 de abril de 1999.

En el recurso KLAN-01-00434, el defensor judicial solicita la revisión y revocación de una resolución emitida el 29 de marzo de 2001. Mediante el referido dictamen, el foro apelado no admitió la tercera demanda enmendada presentada por el incapacitado para formular alegaciones directas contra el Banco Bilbao Vizcaya Argentaria (en adelante BBVA). El tribunal determinó que a virtud de la transacción realizada con S.B. y M.L., la causa de acción contra el BBVA estaba incluida. El tribunal desestimó la causa de acción invocada contra el BBVA con perjuicio. En su recurso, la parte apelante impugna tal actuación.

Con los escritos en oposición de las partes, la comparecencia de la Procuradora Especial de Relaciones de Familia y contando con una transcripción de la vista celebrada el 17 de agosto de 1999, nos encontramos en posición de resolver. Antes de ello, exponemos el trasfondo procesal y fáctico que originó la presentación de estos recursos.

# I

Al apelante, Luis Angel Cruz Cruz, es un joven que está postrado en cama desde su nacimiento por padecer parálisis cerebral, cuadriparesía espástica, retardo psicomotor severo, epilepsia, asma bronquial y deficiencia en el desarrollo físico. Alrededor de marzo de 1987, con motivo de una demanda de impericia médica incoada ante un tribunal del Estado de Nueva York, el incapacitado, quien para ese entonces era menor de edad, transigió todas sus reclamaciones contra las partes allí demandadas. Con la orden del Tribunal Supremo del Estado de Nueva York, el 5 de junio de 1997, quedó depositada en la sucursal de M.L. en Nueva York la cantidad de $1,066,666.70. La cuenta quedó abierta a nombre de Angel Rafael Rivera Cruz como tutor o guardián de Luis Angel Cruz Cruz. El tribunal de aquel Estado impuso una serie de restricciones a la referida cuenta entre las que se encontraba que no podía disponerse del dinero consignado en dicha cuenta sin la autorización de un tribunal con competencia.

Con posterioridad al depósito del dinero en la cuenta de M.L., el padre del incapacitado, señor Angel Rafael Cruz Colón (en adelante señor Cruz Colón), se trasladó a residir junto a su familia al Municipio de Guayama. Alrededor de marzo de 1992, un empleado de S.B. le asesoró para transferir los fondos consignados en la referida cuenta en Nueva York a su sucursal en Puerto Rico. Sin que mediara una orden judicial, los fondos fueron trasladados y depositados en una cuenta de S.B. en Puerto Rico. El mismo empleado, con conocimiento de las condiciones y limitaciones a dicha cuenta, volvió a asesorar al señor Cruz Colón para que realizara una inversión de dinero en la compra de valores. Dichas transacciones resultaron en detrimento de los intereses del incapacitado produciendo pérdidas cuantiosas. A noviembre de 1993, la cuenta reflejaba un balance de solamente $604,918.67.

Los padres del incapacitado iniciaron un litigio contra las casas de corretaje S.B. y M.L. Alegaron que éstas le indujeron de forma fraudulenta, engañosa y/o negligente a hacer inversiones poco juiciosas y altamente arriesgadas de los fondos pertenecientes a su hijo. Las demandadas presentaron una reconvención contra los padres por los retiros no autorizados para su beneficio y de la sociedad de gananciales por ellos compuesta. El Tribunal de Primera Instancia encontró que existía un irreconciliable conflicto de intereses entre el incapacitado

y sus padres que le impedía presentar reclamación alguna a nombre de su hijo, por lo que nombró como defensor judicial de éste al licenciado Harold Vicente. El 31 de agosto de 1994, éste presentó una demanda a favor del incapacitado. Al igual que la demanda presentada por los padres, le imputó a S.B., M.L., Rafael Rivera, Reynaldo Arroyo, Héctor Arroyo y otros, fraude y negligencia al transferir y/o permitir la transferencia de los fondos de la cuenta de Nueva York a Puerto Rico y realizar una serie de retiros y transacciones en perjuicio de los intereses del incapacitado. Invocó causas de acción bajo el Artículo 1802 del Código Civil, Incumplimiento de Contrato y otros. Solicitó, además, la imposición de intereses, honorarios de abogado y gastos relacionados.

Comenzado el litigio, consolidadas las causas de acción invocadas por padre e hijo, presentadas reconvención enmendada contra Cruz Colón y esposa, demandas de coparte y otros, se realizó un extenso y complicado descubrimiento de prueba. Se alegó que luego de comenzado el litigio, se gestionó una autorización judicial para que se retiraran más fondos de las cuentas del incapacitado. Una de las partidas retiradas fue lo que se conoce como *"zero cupon"* con un valor al vencimiento en el año 2007 de $100,000.00. Este valor fue remitido por S.B. al BBVA para garantizar el pago de un préstamo hipotecario que el padre del incapacitado había obtenido en dicho banco sobre la casa donde habitan actualmente.

Como consecuencia de lo anterior, S.B. trajo al litigio al BBVA como tercero demandado. El BBVA contestó la demanda negando responsabilidad y reconvino contra S.B. por representarle que el *"zero cupon"* pertenecía al padre. Por su lado, el defensor judicial presentó una tercera demanda enmendada para formular alegaciones directas contra el BBVA.

Alrededor de abril o mayo de 1999 y previo a un señalamiento de juicio en su fondo, el defensor judicial entró en conversaciones con las demandadas con miras a poner fin al litigio. Informa el defensor judicial en su recurso que las conversaciones tenían dos aspectos: la primera, asegurar el reembolso de los fondos al incapacitado para garantizar su bienestar; y la segunda, recobrar los fondos en poder el BBVA provenientes del *"zero cupon"* poniendo así fin al litigio. Según el acuerdo, se pagaría al defensor judicial sus honorarios mediante un plan de pagos separado y se le reembolsarían los gastos por él incurridos.

Llevadas a cabo las conversaciones correspondientes, el 28 de mayo de 1999, el defensor judicial en consideración a que la transacción propuesta era beneficiosa para su cliente puso en marcha la primera etapa del proceso de transacción para la cual solicitó la correspondiente autorización judicial. En la misma, detalló las prestaciones reciprocas entre él, S.B. y M.L. a razón de pagos de $1,333.24 por mes a favor del incapacitado a partir del 1 de abril de 1999, incrementos anuales de un tres porciento (3%) durante su vida y pagos globales comenzado el 1 de marzo del 2004. En resumidas cuentas, el pago garantizado durante al menos treinta (30) años ascendía a $1,521,153.35. Si el incapacitado alcanzaba la edad de setentisiete (77) años, los pagos acumulados alcanzaría la suma de $2,781,411.77. El acuerdo incluia pagos por concepto de honorarios de abogados y otros conceptos.

El 17 de agosto de 1999, se celebró una vista ante el foro de instancia para considerar la aprobación del plan de pagos propuesto por S.B. y M.L. Como consecuencia de la misma, luego de escuchar el dictamen favorable de todas las partes y en particular de la Procuradora Especial de Relaciones de Familia, declaró *"Con Lugar"* la petición de autorización judicial. Mediante resolución del 20 de septiembre de 1999, dispuso las siguientes condiciones:

*"1. Los pagos a ser realizados por Smith Barney y Merill Lynch, de conformidad con el plan estructurado que fue incluido en la tabla que se acompañó con la petición de autorización judicial, se harán a través del defensor judicial.*

*2. El defensor judicial depositará en la Secretaría de este Tribunal los pagos recibidos mensualmente,*

*hasta que otra cosa se disponga.*

*3. Los pagos globales pagaderos cada cinco años, conforme al plan presentado en la petición de autorización judicial, serán entregados al defensor judicial, quien también los depositará en la Secretaría de este Tribunal, hasta que otra cosa se disponga.*

*4. Las partes deberán presentar una estipulación con respecto a las restantes controversias, dentro de la próximos quince (15) días.*

*5. El Tribunal retiene jurisdicción en relación con todo el asunto que tenga que ver con el fiel cumplimiento por las partes de los términos del acuerdo transaccional y de los términos de esta orden."*

El tribunal aprobó los términos del acuerdo entre el defensor judicial, S. B. y M. L. Las partes anunciaron que dispondrían de las restantes controversias del pleito, ya que las demás partes en el litigio no figuraban en los acuerdos logrados. Las partes continuaron las conversaciones transaccionales. Alegan S.B. y M.L. que decidieron no depositar los pagos mensuales acordados en la fecha estipulada. El propósito era recoger en un sólo documento todos los acuerdos en cuanto a todas las reclamaciones del pleito incluyendo el aspecto del caso relacionado al BBVA.

Mientras tanto, Rafael Angel Cruz Cruz, hermano del incapacitado, presentó ante el Tribunal de Primera Instancia, Sala Superior de Guayama, una petición para que se le nombrara como tutor de su hermano. El 27 de enero de 2000, al autorizar el nombramiento, dicho foro reconoció los pagos de la referida transacción como parte de los activos del menor incapacitado. El Tribunal de Guayama ordenó al defensor judicial depositar en su unidad de cuentas los pagos mensuales objeto de la transacción.

El 18 de abril de 2000, el foro apelado celebró otra vista transaccional para considerar aquellos aspectos del caso no considerados durante la vista del 17 de agosto de 1999. El defensor judicial informó que había llegado a un acuerdo en cuanto a las restantes controversias. Solicitó un término de treinta (30) días adicionales para presentar el escrito de estipulación correspondiente para poner fin al litigio. El tribunal señaló vista para el 9 de junio de 2000.

A la vista señalada, el defensor judicial cambió su posición e informó al tribunal que no estaba dispuesto a recomendar el acuerdo en cuanto al BBVA. Adujo que dicha institución no estaba dispuesta a desistir de su demanda de ejecución de hipoteca y condonar al padre del incapacitado $20,000.00 por concepto de intereses moratorios acumulados por la hipoteca no pagada y honorarios de abogado adeudados por éste. Solicitó se señalará el caso para vista en su fondo. Las compañías solicitaron que se celebrara vista transacional sobre los aspectos del caso que restaban por resolver. Ante tal situación, el foro apelado acogió la posición del defensor judicial y señaló la celebración de juicio en su fondo.

Las compañías demandadas-apeladas insistieron se pusiera en vigor el acuerdo transaccional del 17 de agosto de 1999 como perfeccionado mediante la emisión de una sentencia parcial. El 1 de octubre de 2000, se declaró *"No Ha Lugar"* la solicitud de sentencia parcial. El tribunal sostuvo, contrario a lo que había dispuesto el 20 de septiembre de 1999, que al no haberse desistido de todas las causas de acción contra las casas de corretaje, no se había perfeccionado un acuerdo de transacción.

El 27 de noviembre de 2000, el tribunal dictó otra orden para dejar sin efecto el señalamiento de juicio en su fondo, solicitó se le ilustrara si se habían desistido de todas las reclamaciones contra S.B. y M.L. En cuanto a la tercera demanda enmendada, aceptó la misma, ordenó su contestación y pautó el descubrimiento de prueba.

Ante lo requerido, S.B. y M.L. argumentaron que las reclamaciones del padre demandante, señor Cruz

Colón, y cualquier posible reclamación contra el BBVA son separadas y distintas a las reclamaciones del defensor judicial contra ellas, por lo que la falta de acuerdo con el BBVA no era obstáculo para que se perfeccionara el contrato de transacción entre ellas y el defensor judicial. Expusieron que los términos y condiciones del contrato de transacción son aquéllas que surgen expresamente de la petición de autorización judicial que fueron aprobadas en la vista del 17 de agosto de 1999. El defensor judicial adujo que no se perfeccionó el referido contrato al no cumplirse las condiciones requeridas por las casas de corretaje.

Con el anterior trasfondo y luego de escuchar la grabación de la vista del 17 de agosto de 1999, el foro apelado cambió su posición original y resolvió mediante la sentencia apelada emitida el 22 de enero de 2001 que en efecto se había perfeccionado un contrato de transacción. De tal modo, aprobó los términos del contrato de transacción entre el defensor judicial, M.L. y S.B. Posteriormente, desestimó la tercera demanda enmendada. El 2 de febrero de 2001, el Tribunal de Primera Instancia determinó que S.B. y M.L. consignaran intereses a razón de un 8.75% anual sobre la cantidad de $28,358.04, cantidad a ser pagada en atraso desde la fecha en que fue acordada y aprobada la transacción.

Evaluados los documentos que obran en autos y los argumentos de las partes, resolvemos que en el caso KLAN-01-00282 es procedente confirmar la sentencia parcial objeto de ese recurso. En cuanto al recurso KLAN-01-00434, resolvemos que es procedente expedir auto de *certiorari* para revocar el dictamen recurrido.

## II

La Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite que en un pleito con múltiples reclamaciones o múltiples partes, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra terceros, el tribunal podrá dictar sentencia final parcial resolviendo los derechos de una de las partes en el litigio sin disponer de la totalidad del pleito. Siempre debe concluir expresamente que no existe razón para posponer dictar sentencia hasta la resolución total del pleito y ordene expresamente que se registre la sentencia. Para ello es necesario que dicha controversia sea separable de las demás controversias restantes.

La Regla 43.5 de Procedimiento Civil, *supra*, es cónsona con el propósito de fomentar una pronta y económica solución de los pleitos. Esto fue precisamente lo que ocurrió en los casos de epígrafe. Al dictar el foro de instancia la sentencia parcial que es objeto de estos recursos, determinó que la reclamación del incapacitado es una separable de las restantes controversias, por lo que era procedente dictarse sentencia final parcial adjudicando en forma final sus derechos únicamente respecto a S.B. y M.L., sin disponer de la totalidad del pleito. En otras palabras, el foro apelado acogió el planteamiento de las casas de corretaje en cuanto a que las reclamaciones del incapacitado y la de sus padres contra ellas eran separables de la acción contra BBVA, por lo que no existe impedimento para que se dictara sentencia parcial sobre dicho aspecto del caso. A base del estado de derecho vigente, el foro de instancia podía dictar la sentencia parcial que es objeto de revisión, separando los reclamos del menor incapacitado contra S.B. y M.L. del resto de las controversias.

## III

Veamos ahora si hubo error al determinarse que durante la vista del 17 de agosto de 1999 se perfeccionó un contrato de transacción.

El Artículo 1709 del Código Civil, 31 L.P.R.A. sec. 4821, establece que la transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado. Un contrato de transacción judicial ocurre cuando, luego de haberse iniciado un pleito, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial. Esta transacción tiene el efecto de terminar el pleito. *Neca Mortg. Corp. v. A & W Dev. S. E.,* 137 D.P. R. 860 (1995). El Artículo 1715 del Código Civil, 31 L.P.R.A. sec. 4827, incorpora el principio de cosa juzgada a lo convenido en un contrato de transacción. Por tal razón, las partes contratantes tienen que considerar los puntos discutidos como definitivamente resueltos y no pueden volver sobre éstos. Al determinar si se configura

un contrato de transacción, son aplicables las normas generales sobre interpretación de contratos, particularmente las que giran en torno a la intención de las partes. 31 L.P.R.A. secs. 3471 a 3472. Veamos cuál fue la intención del defensor judicial al solicitar la autorización judicial.

En el acuerdo que nos ocupa, el defensor judicial solicitó la autorización del foro de instancia. Le presentó al tribunal la oferta consistente de: (1) el plan de pagos a largo plazo garantizado por 30 años, con aumentos anuales en la mensualidad de 3% y pagos globales cada 5 años; (2) el pago de honorarios de abogado y las costas; (3) el desistimiento de la demanda y el desistimiento por parte de M.L. y S.B. de su demanda en contra de los padres del incapacitado y de sus demandas de coparte en contra del BBVA. En atención a tales condiciones, su intención fue clara en dar por terminado el litigio en cuanto al reclamo de negligencia en el manejo de la cuenta. Con la autorización concedida por el Tribunal de Primera Instancia a los términos que le presentó el defensor judicial luego de escuchar el dictamen favorable de todas las partes, se perfeccionó un contrato de transacción.

El defensor judicial alega que no se configuró un contrato de transacción al no cumplirse ciertas condiciones requeridas por las casas de corretaje, en específico que el señor Cruz Colón desistiera de su causa de acción contra éstas y que el tercero demandado BBVA las relevara de cualquier reclamación futura. Hemos analizado la transcripción de la vista celebrada el 17 de agosto de 1999, presentada a instancia de este foro por el defensor judicial. De la misma, se desprende sin lugar a dudas que éste se encontraba plenamente convencido de que la oferta de transacción de S.B. y M.L. era en el mejor beneficio de su cliente, por lo que recomendó la misma al foro de instancia.

Así lo demuestra la transcripción de la vista del 17 de agosto de 1999 en la página 5:

*"Lcdo. Vicente: Nosotros entendemos que esta transacción es **beneficiosa para el incapacitado**, porque el incapacitado necesita un ingreso... un flujo de ingreso constante para su manutención."*

En la página 6 expresó lo siguiente:

*"Lcdo. Vicente: Nos parece que el Tribunal, de entender que esta transacción y que este flujo de efectivo a favor del incapacitado es razonable, **como nosotros estamos recomendado** que lo es, establezca aquellas restricciones cónsonas con las restricciones que impuso el Juez Clark en su orden original, para que el dinero que reciban los padres para invertido en la manutención y el cuido de este incapacitado sean efectivamente utilizados para esos fines."*

La transacción propuesta no tenía ningún otro tipo de requisito excepto los que se consignaron en la petición de autorización judicial. De tal modo, en las páginas 33, 34, 41 y 48 expresó lo siguiente:

*"Lcdo. Vicente: Déjeme decirle una cosa adicional, Vuestro Honor, y es que... hay otra vertiente que no hemos tocado y es que hay una reclamación, que es... que recibiría el incapacitado además de esto. Hay una reclamación que consta... que tiene Smith Barney y que consta, del Banco Bilbao Vizcaya, por unos... un '**Zero Coupon Bond'**, que estaba depositado para garantizar un préstamo relacionado con uno de los edificios que están envueltos en la controversia.*

*Como parte de esta transacción, y se lo quiero informar a la compañera, porque va a ser... va a ser... esto va a **resultar en lo que sea, en algún beneficio adicional para el incapacitado**. . .*

*...*

*Lcdo. Vicente: **No está dentro de esta transacción**. Pero quiero mencionarlo porque puede ser, incluso,*

*dependiendo de lo que se negocee, yo... yo he pedido...*

*Lcdo. Vicente: ... que a cambio del desistimiento que los padres que van a hacer... ellos van a desistir de su reclamo contra Smith Barney, Smith Barney va a desistir del reclamo de los padres y Smith Barney va a desistir del reclamo contra BBV, pero a la misma vez le va a asignar Smith Barney la reclamación que tiene contra BBV sobre este 'Zero Coupon' para que... y eventualmente yo me sentaré con la gente de BBV a ver cómo disponemos de esta parte de los 'Zero Coupons'.* **No hemos metido el asunto del 'Zero Coupon' aquí...**

*Lcdo. Vicente: ...* **porque envuelve un tercero, es un posible beneficio adicional** *que va a depender de qué se pueda lograr y esta transacción tiene que ver netamente con los fondos que salieron de la cuenta de Smith Barney y Merrill Lynch... En su momento traeremos eso adicionalmente a la consideración del tribunal,* **si es que se logra un acuerdo...**

*Lcdo. Vicente: ... Como queda la rabiza del BBV, pues también trataremos de incorporar eso ahí. Incorporaremos los desistimientos voluntarios recíprocos de todo el mundo, como menciona el compañero, pero eso hay que hacerlo en los documentos que vamos a presentar posteriormente. . .*

*Lcdo. Vicente: Lo que quedaría... lo único que podría quedar pendiente, pero que* **no tiene nada que ver con Smith Barney y Merrill Lynch, Vuestro Honor, sería lo del BBV**... *Si no podemos disponer de todo, disponemos de Merrill Lynch y Smith Barney en esta estipulación,* **cerramos ese capítulo** *y entonces se lo informamos al tribunal y nosotros seguiremos negociando con el BBV."*

La anterior transcripción demuestra sin lugar a dudas que el acuerdo con S.B. y M.L. no estaba condicionado al acuerdo respecto al *"zero coupon"* ni a ningún otro acuerdo. Somos de opinión que el defensor judicial lo que pretendió fue enmendar retroactivamente un acuerdo ya aprobado por el tribunal para incluir asuntos no comprendidos en la transacción original. La intención que trasluce, tanto de la solicitud de autorización judicial como de la transcripción de la vista del 17 de agosto de 2000, era dar por terminado sin mayores demoras la reclamación del incapacitado contra las referidas casas de corretaje con relación a las alegaciones de negligencia en el manejo de la cuenta.

A base de lo antes expuesto, visto que la reclamación del incapacitado y la de sus padres es separable y en consideración a los mejores intereses de éste, resolvemos que no hubo error por parte el foro apelado al determinar que se perfeccionó el contrato de transacción que nos ocupa.

## IV

El defensor judicial también alega que incidió el foro de instancia al entender que su orden del 1 de octubre de 2000 no advino final y firme a los treinta (30) días de su notificación. Mediante la referida orden el tribunal dispuso que no se había perfeccionado un contrato de transacción. A virtud de este señalamiento de error, sostiene que la sentencia apelada fue dictada sin jurisdicción porque esta controversia ya fue resuelta mediante la referida orden del 1 de octubre de 2000, la cual era final y firme.

Hemos examinado la orden del 1 de octubre de 2000. En ella, el tribunal no concluyó, según lo requiere la Regla 43.5 de Procedimiento Civil, que no existe motivo para posponer dictar sentencia hasta la resolución final del pleito para que dicho dictamen advenga a ser uno final y firme. Tal dictamen no concluyó el pleito entre las partes, por lo que estaba sujeta a ser reconsiderada en cualquier momento. Tal dictamen, así emitido, es un dictamen interlocutorio sujeto a ser reconsiderado en cualquier momento. *Medio Mundo v. Rivera*, **2001 J.T.S. 88**, resuelto el 8 de junio de 2001; *U.S. Fire Ins. Co. v. A.E.E.*, **2000 J.T.S. 146**, resuelto el 13 de septiembre de 2000.

Con autoridad en ley para el foro de instancia reconsiderar su dictamen y no teniendo este carácter de final,

resolvemos que el error imputado no fue cometido.

## V

El defensor judicial alega, además, que hubo error al ordenarse el pago de intereses a razón de 8.75% sobre la suma de $28,358.04 a partir del 1 de abril de 1999, fecha en que las casas de corretaje venían obligadas a comenzar a satisfacer los pagos parciales. █

Fundamenta este señalamiento de error en que el principal de la pérdida sufrida por el incapacitado como resultado de la mora de S.B. y M.L. no es $28,358.04, sino la suma de la cantidad sustraída o retirada ilegalmente de la cuenta, más los intereses dejados de devengar, lo cual, según el computo del perito presentado por él, al 1 de abril de 1999, ascendía a $825,534.98.

No encontramos que el foro de instancia haya cometido el error imputado. El Artículo 1061 del Código Civil, 31 L.P.R.A. sec. 3025, dispone que si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.

Bajo los términos del acuerdo de transacción perfeccionado quedó establecido que el incapacitado dejó de recibir $28,358.04 durante el período de incumplimiento. En ausencia de un pacto en contrario, es sólo sobre esa cantidad que debía imponerse intereses a razón de 8.75% anual por mora. La actuación del foro de instancia al imponer el pago de intereses sobre la referida cantidad desde el 1 de abril de 1999, se ajusta a derecho.

## VI

Atendamos ahora el señalamiento de error contenido en el recurso KLAN-01-00434. Este recurso impugna un dictamen emitido el 29 de marzo de 2001. Mediante el mismo, el tribunal no admitió la tercera demanda enmendada presentada por el defensor judicial teniendo a BBVA desistida con perjuicio en relación con estos hechos. Es preciso apuntar que mediante resolución del 10 de agosto de 2001, este foro apelativo determinó que el vehículo apropiado para la consideración de este recurso lo era el de *certiorari*.

Con las anteriores consideraciones en mente, pasemos a resolver el planteamiento formulado por el defensor judicial. De tal modo, expone que erró el foro de instancia al desestimar la tercera demanda enmendada presentada por él. Mediante la misma, hizo alegaciones directas contra el BBVA en daños y perjuicios con relación al "*zero coupon*". Aduce que dicho foro estaba impedido de actuar sobre el caso, pues la validez de la transacción estaba en controversia ante este foro apelativo cuando emitió su dictamen.

Al dictarse la sentencia parcial emitida el 22 de enero de 2001, el defensor judicial presentó ante este foro una apelación conforme dispone el Artículo 4.002(a) de la Ley de la Judicatura, según enmendada, 4 L.P.R.A. sec. 22k(a). La presentación del escrito de apelación suspendió los procedimientos ante el Tribunal de Primera Instancia. Sólo podría continuar cualquier cuestión no comprendida en la apelación que no afectara la disposición que finalmente se hiciese del asunto. Artículo 4.002(f), 4 L.P.R..A. sec. 22k(F); Regla 53.9 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Vargas v. González*, **2000 J.T.S. 10**, resuelto el 27 de diciembre de 1999; *Torres Capeles v. Rivera Alejandro,* 143 D.P.R. 300 (1997). Ello significa que el Tribunal de Primera Instancia podría proseguir el pleito en cuanto a cualquier cuestión envuelta en el litigio no comprendida en la apelación.

Un examen del escrito de apelación presentado por el defensor judicial en el recurso KLAN-01-00434 demuestra que entre los errores señalados no se encuentra un señalamiento de error relacionado a la aceptación de la tercera demanda enmendada presentada por él contra el BBVA. Por lo que el litigio podía continuar en cuanto a ese aspecto del caso y cualquier otro asunto no comprendido en la apelación.

No obstante lo anterior, el Tribunal de Primera Instancia determinó en la resolución apelada que la reclamación para la recuperación del *"zero coupon"* fue parte de la transacción efectuada el 17 de agosto de 1999. Por tal razón, no admitió la tercera demanda enmendada, por lo que desestimó la misma con perjuicio contra el BBVA.

Hemos examinado detenidamente los autos de este caso, en particular las cartas que se cursaron los representantes legales de S.B. y el defensor judicial, la tabla de pagos a efectuarse y la transcripción de la vista de autorización judicial celebrada el 17 de agosto de 2000. No surge de los referidos documentos ni de ningún otro que el *"zero coupon"* formase parte de la transacción realizada y aprobada por el Tribunal. Durante la vista de autorización judicial, se refiere a dicho asunto como un asunto separado de las acciones contra el S.B. y M.L. Ello nos lleva a concluir que la reclamación para recuperar el *"zero coupon"* no formó parte de la transacción efectuada el 17 de agosto de 1999. Por lo cual, el foro de instancia cometió error al resolver que estaba incluida en la transacción.

### VII

En mérito de lo antes expuesto, en el recurso KLAN-01-00282 se confirma la sentencia apelada. En el recurso KLAN-01-00434, acogido como *certiorari*, se expide el auto y se revoca la resolución emitida el 29 de mayo de 2001. En tal virtud se reinstalan las alegaciones de la tercera demanda enmendada, en lo que respecta a las alegaciones directas formuladas por el defensor judicial contra el BBVA relacionadas a *"zero coupon"*. Se ordena la continuación de los procedimientos en armonía con lo aquí expuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA** 89

**1.** Se desprende de los autos que S.B. ha estado consignando los pagos acordados y aprobados por el Tribunal de Primera Instancia.