Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO COMO SUCESOR EN INTERÉS DE LA ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO Y LA JUDICATURA<br><br>Demandante-Apelante<br><br>VS.<br><br>SUCN DE ÁNGEL MANUEL LOPREZ TORRES T/C/C ÁNGEL MANUEL LÓPEZ TORRES<br><br>Demandado-Apelado | KLAN202401138 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. LO2023CV00152<br><br>Sala: 401<br><br>Sobre:<br><br>EJECUCIÓN DE HIPOTECA; PROPIEDAD RESIDENCIAL |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2025.

Comparece ante nos la Junta de Retiro del Gobierno de Puerto Rico (en adelante, Junta de Retiro o parte apelante), a través del presente recurso de apelación, y nos solicita que revoquemos la *Sentencia Sumaria Parcial* emitida el 24 de octubre de 2024, y notificada el 28 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI).[1] Mediante dicho dictamen, el TPI declaró *Ha Lugar* en parte la *Moción de Desestimación* (Moción)[2] presentada por la señora Marta Osorio Cepeda (en adelante, señora Osorio Cepeda y/o parte apelada).

---

[1] Apéndice del recurso, a las págs. 555-556. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC) a la Entrada 94.
[2] Apéndice del recurso, a las págs. 235-237.

Asimismo, denegó la *Solicitud de Sentencia Sumaria* presentada el 18 de julio de 2024 por la parte apelante.

Como parte de su dictamen, ordenó a la Junta de Retiro cancelar y entregar el original del pagaré a la señora Osorio Cepeda, a fin de que esta pudiera gestionar la cancelación de la hipoteca en el Registro de la Propiedad. Además, ordenó la eliminación de cualquier anotación preventiva de demanda o embargo relacionada con la finca objeto del litigio, conforme a la Ley del Registro de la Propiedad Inmobiliaria.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen apelado.

**-I-**

El 15 de diciembre de 2023, la Junta de Retiro presentó una *Demanda Enmendada*,[3] en la que reclamó ser acreedora de un pagaré suscrito el 11 de abril de 2001 por Ángel Manuel López Torres (en adelante, señor López Torres) y la señora Osorio Cepeda. En esta, alegó que dicho pagaré estaba garantizado mediante una escritura de hipoteca sobre la finca número 7,738, localizada en Loíza. Además, sostuvo que el 29 de agosto de 2008 el señor López Torres falleció y que, desde el 1 de septiembre de 2014, la señora Osorio Cepeda adeudaba la cantidad de $29,296.73 dólares, por concepto de principal, más intereses al tipo pactado de 7.375% anual incluyendo una suma de $3,699.00 dólares por gastos y honorarios de abogados.

Luego de varias instancias procesales, el 27 de marzo de 2024 la señora Osorio Cepeda presentó su *Contestación a Demanda Enmendada y Reconvención* en la que argumentó que, al momento del fallecimiento del señor López Torres, ambos tenían un Seguro de Vida Hipotecario (en adelante, seguro y/o Seguro de Vida

---

[3] Apéndice del recurso, a las págs. 95-114.

Hipotecario) emitido por la parte apelante cuyo propósito era extinguir la deuda hipotecaria en caso del fallecimiento de uno de los deudores. En la *Reconvención,* la señora Osorio Cepeda reclamó la devolución de cualquier cantidad pagada luego del fallecimiento del señor López Torres, al considerar que la obligación hipotecaria había sido cancelada por el seguro. Luego de ello, previo a que la Junta contestara formalmente la *Reconvención,* el 4 de abril de 2024 la parte apelada presentó su *Moción de Desestimación.*[4] En ella, reiteró su argumento sobre la existencia del seguro y afirmó que resultaba procedente la desestimación de la Demanda Enmendada instada en su contra.

El 21 de mayo de 2024, mediante *Moción para Someter Documentos Adicionales para la Consideración del Tribunal,* la señora Osorio Cepeda presentó una carta suscrita el 31 de mayo de 2011 por la señora Nancy González Ramos, Analista de Préstamos de la Junta de Retiro.[5] En dicho documento, intitulado "*NOTIFICACIÓN DE CAMBIO DE SEGURO DE VIDA HIPOTECARIO*", la analista de préstamos de la Junta de Retiro notificó a la señora Osorio Cepeda que el seguro había culminado el 1 de octubre de 2008.

Así, el pleito continuó su trámite y el 18 de julio de 2024 la parte apelante presentó su *Réplica a la Reconvención*[6] en la cual sostuvo que el Seguro de Vida Hipotecario se canceló el 1 de agosto de 2008, entiéndase, quedó cancelado antes del fallecimiento del señor López Torres. La parte apelante aseguró que, conforme al Reglamento Núm. 3544 del 3 de diciembre de 1987, la cobertura concluía automáticamente luego de 90 días de atraso en los pagos. Adujo que ni el señor López Torres ni la señora Osorio Cepeda

---

[4] Apéndice del recurso, a las págs. 235-238.
[5] *Íd.,* a la pág. 346.
[6] *Íd.,* a las págs. 376-436.

realizaron pagos durante los meses de mayo, junio y julio de 2008, lo que resultó en la cancelación automática del seguro a partir del 1 de agosto de 2008. Así las cosas, la parte apelante presentó su *Oposición a la Moción de Desestimación*, en la que reafirmó su argumento sobre la cancelación del seguro antes del fallecimiento del señor López Torres.

El 21 de agosto de 2024, la señora Osorio Cepeda presentó una *Dúplica a la Réplica de la Reconvención*,[7] en la cual reiteró su postura e incluyó la "*NOTIFICACIÓN DE CAMBIO DE SEGURO DE VIDA HIPOTECARIO*", y aseguró que la póliza de Seguro de Vida Hipotecario había cancelado la deuda.

Posteriormente, el 30 de septiembre de 2024, la parte apelada instó una *Réplica a Moción de Desestimación y Solicitud de Sentencia Sumaria*,[8] en la que reafirmó los argumentos previamente esbozados a lo largo del trámite procesal sobre la cancelación del seguro. El 21 de octubre de 2024, la Junta de Retiro radicó una *Dúplica a la Réplica*[9] mediante la cual insistió en que el seguro había sido cancelado previo al fallecimiento del señor López Torres por lo que la deuda no había sido cancelada. Finalmente, el 23 de octubre de 2024, la señora Osorio Cepeda presentó una *Tríplica* de la cual surgen los mismos argumentos previamente reseñados.

Así las cosas, el 24 de octubre de 2024 el Tribunal de Primera Instancia emitió Sentencia Sumaria Parcial. Mediante dicho dictamen, acogió la *Moción de Desestimación* presentada por la señora Osorio Cepeda y la consideró como una solicitud de sentencia sumaria conforme a la Regla 10.2 de Procedimiento Civil.

---

[7] Apéndice del recurso, a las págs. 520-522.
[8] *Íd.*, a las págs. 529-532.
[9] *Íd.*, a las págs. 534-538.

Asimismo, estableció ocho (8) determinaciones de hechos, las cuales se exponen a continuación:

1. El 11 de abril de 2001, la parte demandada suscribió un Pagaré Hipotecario a favor de "La Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura de Puerto Rico", o a su orden, por la suma de $36,990.00, más intereses al tipo pactado de 7.375% anual desde el 1 de junio de 2001 hasta el día de su vencimiento el 1 de mayo de 2031; y demás créditos accesorios.

2. En aseguramiento del Pagaré antes mencionado la parte demandada otorgó la Escritura de Hipoteca Número 29 otorgada en San Juan, Puerto Rico, el 11 de abril de 2001, ante el Notario Público Rafael Quiñones Vigo, inscrita al folio 170 del tomo 144 de Loíza, Finca Nómero 7,738, inscripción 2da.

3. La propiedad que garantiza la obligación antes mencionada se describe de la siguiente manera:

   > RÚSTICA: Parcela marcada con el número ciento setenta y cuatro en el plano de parcelación de la comunidad rural Vieques del Barrio Medianía Alta, del término municipal de Loíza, Puerto Rico, con una cabida superficial de cero cuerdas con setecientos sesenta y tres diezmilésimas de otra, equivalente a doscientos noventa y nueve punto noventa y cinco metros cuadrados. En lindes por el NORTE, con la parcela número ciento setenta y dos de la misma comunidad; por el SUR, con la parcela número ciento setenta y seis de la misma comunidad; por el ESTE, con la calle número tres de la comunidad; y por el OESTE, con la parcela número ciento setenta y tres de la misma comunidad. Inscrita al folio 169 del tomo 144 de Loíza. Registro de la propiedad de Puerto Rico, Sección III de Carolina. Finca Número 7,738.

4. El 11 de abril de 2001, y en virtud del Reglamento de Seguro de Vida Hipotecario Colectivo, La Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura de Puerto Rico concedió un Certificado de Seguro de Vida Hipotecario Colectivo a favor de Marta Osorio Cepeda y Ángel M. López Torres.

5. El Certificado de Seguro identifica a Marta Osorio Cepeda como "Participante Asegurado" y al señor Ángel M. López Torres como "Cónyuge Co-Deudor".

6. El Certificado de Seguro establece que: "En caso del deceso del participante asegurado o de su cónyuge co-deudor, este seguro será liquidable y quedará cancelado el balance de la deuda hipotecaria contraída a favor del Sistema de Retiro".

7. El señor Ángel M. López Torres falleció el 29 de agosto de 2008.

8. La protección del Seguro de Vida Hipotecario terminó el 1 de octubre de 2008.

El tribunal concluyó, como cuestión de hecho, que la protección del Seguro de Vida Hipotecario permanecía vigente al momento del fallecimiento del señor López Torres. En consecuencia, determinó que, conforme al lenguaje del propio seguro, procedía la cancelación de la deuda hipotecaria.

En virtud de lo anterior, mediante Sentencia Sumaria Parcial emitida el 24 de octubre de 2024 y notificada el 28 de octubre de ese mismo año, el TPI declaró Ha Lugar en parte la *Moción de Desestimación* presentada por la señora Marta Osorio Cepeda. Denegó la *Solicitud de Sentencia Sumaria* instada por la parte apelante y ordenó a la Junta de Retiro cancelar y entregar el original del pagaré a la señora Osorio Cepeda para que esta pudiera gestionar la cancelación de la hipoteca ante el Registro de la Propiedad. Además, ordenó la eliminación de cualquier anotación preventiva de demanda o embargo relacionada con la finca objeto del litigio, en conformidad con la Ley del Registro de la Propiedad Inmobiliaria.

Por su parte, el 12 de noviembre de 2024, el apelante presentó una *Moción de Reconsideración*, la cual fue declarada No Ha Lugar el 21 de noviembre de 2024, notificada el 22 de noviembre de 2024.

Inconforme, la Junta de Retiro acude ante este tribunal y apunta el siguiente error:

Erró el Honorable Tribunal de Primera Instancia y actu[ó] contrario a derecho, al determinar contrario a la prueba presentada que el pr[é]stamo del caso de ep[í]grafe qued[ó] cancelado por un seguro de vida inexistente.

Examinado el recurso y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**-II-**

**-A-**

La Regla 10 de Procedimiento Civil, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas son: (1) una moción de desestimación; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1; *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043,1065 (2020). No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que entienda que tiene derecho y que la regla contempla. 32 LPRA Ap. V, R. 10.7.

Por su parte, la Regla 10.2 de Procedimiento Civil, *supra*, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. (Énfasis suplido). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra,* pág. 1066.

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante. *Eagle Security v. Efrón Dorado et al.*, *supra,* pág. 84; *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra,* el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security v. Efrón Dorado et al., supra,* pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre et al.*, 211 DPR 579, 614-615 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al., supra,* págs. 400-401.

Por otro lado, la Regla 10.3 de Procedimiento Civil, *supra,* dispone que:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3 de este apéndice. **Si en una moción en la que se solicite**

**sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36** de este apéndice, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha reiterado que, bajo este mecanismo, sobre la Regla 10.3 de Procedimiento Civil, *supra*, "se puede utilizar después de que se haya contestado la demanda y cuando de las alegaciones surja que no hay controversia sustancial de hechos, de manera que la celebración de un juicio en su fondo para dilucidar la prueba resulte innecesaria". *W.M.M., P.F.M. et al. v. Colegio et al.,* 211 DPR 871, 884 (2023); (citas omitidas).

De igual forma, el Tribunal Supremo de Puerto Rico ha sostenido que puede proceder una moción de desestimación, acompañada de declaraciones juradas y documentos en todos aquellos asuntos jurisdiccionales. Incluso, esta documentación basta para demostrar, de manera *prima facie* la existencia de prueba en apoyo sobre cuestiones jurisdiccionales. *Molina v. Supermercado Amigo, Inc.,* 119 DPR 330, 340, 343 (1987). Posteriormente, nuestro Tribunal Supremo en *Torres Capeles v. Rivera Alejandro,* 143 DPR 300, 309 (1997), reiteró que:

> La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. **El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración.** Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el

tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria. (Énfasis suplido).

Así pues, se desprende del derecho antes expuesto que, el Tribunal Supremo de Puerto Rico no limitó la exposición de una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, a la cual se incorporaron documentos cuya autenticidad no está en controversia para la consideración del tribunal.

*-B-*

El mecanismo procesal de sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que

su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión,* 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra,* pág. 213. La controversia sobre el hecho material debe ser real. *Íd.* A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.,* págs. 213-214 *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria,* 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra.* En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Íd.*, citando a *Ramos Pérez v. Univisión, supra,* pág. 214 (Cita depurada). De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón,* supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *Íd.* **Asimismo, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo*, supra; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).** Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

En materia estrictamente procesal, de acuerdo con las Reglas 36.1 y 36.2 de Procedimiento Civil, el promovente de la moción de sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Específicamente, la Regla 36.1 de Procedimiento Civil, *supra*, prescribe el momento en que una parte reclamante puede solicitar una sentencia sumaria a su favor, estableciendo lo siguiente:

> Una parte que solicite un remedio podrá presentar, en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

En cambio, la Regla 36.2 de Procedimiento Civil regula el momento en que una parte contra quien se reclama solicita el remedio de la sentencia sumaria, disponiendo lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción de sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

Mientras tanto, la Regla 36.3(b) de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

A estas disposiciones, la Regla 36.3(c) de Procedimiento Civil añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36 la parte promovida no podrá descansar únicamente en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar tan detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la referida Regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

De otra parte, en *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento

Civil y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil. *Íd.*

En tercer lugar, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

**-C-**

Existen distintos tipos de seguro, por lo que podemos distinguir entre aquellos que van dirigidos a resguardar aspectos personales o pérdidas a la propiedad del propio asegurado, a diferencia de los seguros que le ofrecen protección frente a reclamaciones instadas en su contra por terceros que han sufrido daños por su causa. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 900 (2012). Esta última modalidad, conocida como seguro de responsabilidad civil o pública, tiene como fin primordial

garantizar al asegurado contra la responsabilidad civil en que pueda incurrir ante terceros por actos de los que sea legalmente responsable. En otras palabras, "**el asegurador se compromete, conforme a las condiciones estipuladas en el contrato, a indemnizar a un tercero por aquellos daños y perjuicios que le ha causado el asegurado**". *Íd.,* pág. 900. (Énfasis suplido).

Por otro lado, sobre las pólizas de seguros por responsabilidad contractual, a tenor con las disposiciones, del código de seguros, *supra,* también aplicamos las disposiciones del Código Civil de Puerto Rico. En esencia, se dispone que cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus términos. 31 LPRA sec. 3471.[10] El Tribunal Supremo de Puerto Rico ha reiterado que, el Código Civil de Puerto Rico es fuente de derecho supletorio al interpretar correctamente un contrato de seguro. *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003), citando a *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1 (1981).

Es preciso recordar que "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros". (Énfasis suprimido en el original). *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 900, citando a *Meléndez Piñero v. Levitt & Sons of P.R.,* 129 DPR 521 (1991). Cónsono con lo antes expuesto, **"[l]a cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza juntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar"**. *Íd.,* pág. 900. (Énfasis suplido). Por consiguiente, para precisar el alcance de la protección que ofrece una póliza,

---

[10] Hacemos referencia al Código Civil de de Puerto Rico, 1930, 31 LPRA 3471, hoy derogado por la Ley Núm. 55-2020, 31 LPRA sec. 5311, por ser de aplicación al momento de los hechos.

resulta necesario evaluar si el contrato contiene cláusulas de exclusión que exceptúen determinados eventos, riesgos o peligros de la cubierta". *W.M.M., P.F.M. et al. v. Colegio et al., supra*, pág. 889; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1021 (2020).

Ahora bien, el principio de hermenéutica rige la interpretación que impone el Código de Seguros**.** Esta norma no tiene el efecto de obligar a los tribunales a interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad. *Serrano Picón v. Multinational Life Ins., supra; S.L.G. Francis-Acevedo v. SIMED, supra, págs. 387-388; Echandi Otero v. Steward Title, supra, pág. 370.* En cuestión de hermenéutica, el Código de Seguros dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherida a la póliza y que forme parte de esta. *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 576-577 (2013).

A su vez, si los términos del contrato de seguro son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Sin embargo, al reconocer que el contrato de seguro lo redacta en su totalidad el asegurador, las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado. Por el contrario, en ausencia de ambigüedad, las cláusulas del contrato son obligatorias. *Íd.* págs. 565-566.

Por otro lado, las cláusulas de exclusión limitan la cubierta de una póliza de seguro al exceptuar determinados eventos, riesgos o peligros. *Viruet et al. v. SLG Casiano-Reyes,* 194 DPR 271, 279 (2015). Al determinar cuáles son los riesgos cubiertos por una póliza de seguro es necesario considerar si en el contrato figura una cláusula de exclusión. **Estas cláusulas tienen el propósito de**

**limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros**. Por dicha razón, el máximo foro de Puerto Rico ha resuelto que "las exclusiones se han de *interpretar restrictivamente* a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada". *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1021; *Echandi Otero v. Stewart Title, supra*, págs. 370-371. *Monteagudo Pérez v. E.L.A., supra,* pág*. 21.* (Bastardillas suprimidas, énfasis suplido).

No obstante, y a tenor con la norma general, si una cláusula de exclusión aplica claramente a determinada situación, la aseguradora no está obligada a responder por los riesgos expresamente excluidos. *Echandi Otero v. Stewart Title, supra*, pág. pág. 371. Finalmente, debemos destacar que, **"corresponde al asegurado[,] el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión"**. *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1022. (Énfasis suplido).

### -D-

El Reglamento de Seguro de Vida Hipotecario Colectivo, "tiene el propósito de establecer el seguro de vida hipotecario colectivo en que el Sistema de Retiro sea el asegurador del participante y a la vez el beneficiario". Reglamento Núm. 3544 del 3 de diciembre de 1987, *et al.* Asimismo, el asegurado quedará cubierto por el balance adeudado desde la fecha en que se firme las escrituras del préstamo hipotecario. Artículo IX, *supra*.

En lo pertinente al caso de marras, el referido Reglamento establece, en cuanto a pagos de reclamaciones en los casos de seguro conjunto entre cónyuges, que bastará la muerte de

cualquiera de los dos para que se pueda reclamar el pago de seguro cuando uno de estos o ambos son participantes codeudores y co-asegurados. Artículo XI, *supra.*

Con relación a la terminación del seguro, el Reglamento de Seguro de Vida Hipotecario Colectivo establece que podrá terminarse en casos donde han transcurrido noventa (90) días o más de atraso en el pago mensual del préstamo. Artículo XII, *supra.* Asimismo, antedicho término se calculará de forma consecutiva y acumulativa. *Íd.*

Por otro lado, el referido Reglamento dispone que "bastará el aviso ofrecido al asegurado en su Certificado de Seguro, entregado al momento de firmar las Escrituras de su préstamo hipotecario, como notificación para cancelar su seguro de vida en caso de incumplir cualesquiera de los incisos del Articulo XIII". Artículo XIV del Reglamento Núm. 3544-1987. Sin embargo, establece que **el Sistema enviará notificaciones donde informará al deudor que ya no cuenta con los beneficios del Seguro de Vida.** *Íd.* (énfasis nuestro).

### -III-

En el recurso de Apelación ante nuestra consideración, la parte apelante esbozó un (1) error que juzga cometió el foro primario. En síntesis, señaló que erró el Tribunal de Primera Instancia y actuó contrario al derecho, al determinar de manera contraria a la prueba presentada, entendiendo que el préstamo del caso de epígrafe quedó cancelado por un seguro de vida inexistente. Cónsono con lo anterior, debemos puntualizar que Nuestro Más Alto foro ha establecido que una parte promovida no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contra declaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. J.F.*

*Montalvo, supra,* pág. 452. Es por ello que, adelantamos que no le asiste la razón a la parte apelante.

Según hemos expuesto, para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, **aun interpretando la demanda lo más liberalmente a su favor.** *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015). Por otra parte, la Regla 10.2 de Procedimiento Civil establece que, a discreción del foro inferior, una moción de desestimación puede ser considerada como una sentencia sumaria en aquellos casos donde se exponen materias no contenidas en las alegaciones de la demanda y éstas no son excluidas por el tribunal. 32 LPRA Ap. V, R. 10.2. En el presente caso, la parte apelada en su *Moción de Desestimación* expuso la existencia de un Seguro de Vida Hipotecario, materia no incluida en las alegaciones de la demanda. Ante ello, el foro primario determinó no excluir dicha materia y acogió la *Moción de Desestimación* presentada por la parte apelada como una de sentencia sumaria.

Referente a lo anterior, Nuestro Más Alto Foro ha establecido que nos encontramos en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015). Por tal razón, dicha revisión acontece *de novo. Íd.*

Luego de evaluada toda la prueba ante nos, la apreciación de este foro es que no existe controversia sustancial en los hechos materiales. Por lo tanto, restando únicamente por resolverse la cantidad total de los pagos emitidos por la parte apelada luego del 29 de agosto de 2008, procedía disponer de la presente controversia por la vía sumaria.

Por otra parte, reiteramos que en nuestro ordenamiento jurídico se ha dispuesto que **"corresponde al asegurado[,] el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión"**. *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1022. (Énfasis suplido). Cónsono con lo anterior, precisa resaltar que, en la *Moción de Desestimación*, la parte apelada señaló que existe un Seguro de Vida Hipotecario Colectivo que canceló la deuda de las sumas reclamadas con la muerte del señor López Torres. A su vez, instó una *Reconvención* y alegó que procedía la devolución de cualquier cuantía satisfecha posterior a 29 de agosto de 2008, fecha de fallecimiento de su cónyuge. Para sustentar lo alegado, presentó la Certificación del Seguro de Vida Hipotecario Colectivo. De este se desprende que la señora Osorio Cepeda es la Asegurada y su difunto cónyuge, el señor López Torres es el co-Deudor. Asimismo, el documento certifica que **en caso del desceso del participante asegurado o de su cónyuge co-deudor, el seguro será liquidable y quedará cancelado el balance de la deuda hipotecaria contraída a favor del Sistema de Retiro.** *Véase*, Anejo 1 Entrada 42 SUMAC (énfasis nuestro). De igual forma, precisa puntualizar que nuestro ordenamiento jurídico ha establecido que, si los términos del contrato son claros y no dejan duda sobre la intención de los contratantes, se deberá tomar el sentido literal de sus cláusulas. *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 555-556 (2013). No obstante, se ha determinado en relación a los contratos de seguros que, por ser redactado por el asegurador, las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado. *Íd.* Reiteramos que, el seguro presentado por la parte apelada contiene cláusulas que no dejan duda sobre la intención de los contratantes y por tal razón, estas se deben tomar en su sentido

literal. Así las cosas, justipreciamos que el seguro canceló el balance de la de la deuda el 29 de agosto de 2008, día de la muerte del cónyuge codeudor.

En respuesta, la parte apelante en la *Réplica a la Reconvención* sostuvo que la parte apelada incumplió con los pagos de los meses mayo, junio y julio del 2008 y que, a razones de lo anterior, el seguro quedó cancelado el 1 de agosto de 2008. A su vez, afirmó que esto ocurrió previo a la muerte del señor López Torres. Dispuso que, según el Reglamento de Seguro de Vida Hipotecario Colectivo podrá terminarse el seguro en casos donde han transcurrido noventa (90) días o más de atraso en el pago mensual del préstamo.

Cabe resaltar que, la parte apelada para sustentar la deuda anteriormente esbozada adjuntó una tabla fechada en 5 de junio de 2024. *Véase*, Anejo 2 Entrada Núm. 78 de SUMAC. No obstante, la tabla no certifica con certeza los pagos emitidos y/o debidos por la parte apelada. También, la parte apelante incluyó una declaración jurada que establece que la parte apelada "por razón de no haber cumplido con los pagos mensuales según pactados, adeuda a la parte [apelante] la suma de $29,296.73 por concepto principal, desde el 1ro de septiembre de 2014, más intereses al tipo pactado de 7.375% anual, 1ro de agosto de 2014". *Véase*, Entrada Núm. 77 de SUMAC. Reiteramos que lo anterior presenta varias incongruencias con relación a las alegaciones de la parte apelante. Asimismo, puntualizamos que mencionada parte no incluyó prueba adicional para sustentar sus señalamientos.

De otro lado, la parte apelada en su *Dúplica a Réplica de Reconvención* adjuntó una carta suscrita el 31 de mayo de 2011 por la señora Nancy González Ramos, Analista de Préstamos de la Junta. *Véase*, Anejo 1 Entrada Núm. 83 de SUMAC. En esta, se le notificó a la parte apelada que el seguro terminó el 1 de octubre de 2008. Reiteramos que, el contenido de aludida notificación enviada

por la parte apelante es contrario a las alegaciones de dicha parte. Del mismo modo, en respuesta a referida *Moción*, la parte apelante sostuvo sus alegaciones previas. Así, pues, no incluyó prueba sobre notificaciones emitidas a la parte apelada exigiendo los alegados pagos debidos y/o apercibiendo de la cancelación del seguro para la fecha que esta parte alega. Por lo tanto, referida parte no controvirtió la carta presentada por la parte apelada.

Así las cosas, la parte apelante descansó sus alegaciones en lo establecido en el Artículo XIV del Reglamento de Seguro de Vida Hipotecario Colectivo. Este establece que "bastará el aviso ofrecido al asegurado en su Certificado de Seguro, entregado al momento de firmar las Escrituras de su préstamo hipotecario, como notificación para cancelar su seguro de vida [. . .]". A pesar de que, mencionado artículo contiene una línea que enfatiza que el sistema enviará notificaciones donde se informará al deudor que ya no cuenta con los beneficios del seguro. Aun así, del expediente surge que no se le envió a la parte apelada notificaciones sobre la alegada cancelación del seguro hasta tres (3) años después de la muerte del señor López Torres.

Aun cuando aceptáramos, según alega la parte apelante, que no es requerida la notificación de cancelación, lo cierto es que enviaron una notificación tres (3) años más tarde en la que se informa una fecha diferente a la que señalan como día en que se canceló referido seguro. Por lo tanto, nos queda claro que el seguro quedó cancelado para el día 1 de octubre de 2008, según se desprende de la carta enviada por la parte apelante.

Ante todo lo expuesto, y luego de un análisis exhaustivo de los autos ante nuestra consideración, nos es forzoso concluir que el Seguro de Vida Hipotecario se encontraba vigente al momento de la muerte del señor López Torres y en consecuencia, procedía la

cancelación de la deuda hipotecaria. No se cometió el error señalado por la parte apelante.

**-IV-**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Bermúdez Torres concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones