CARLOS L. TORRES CAPELES, demandante y apelado, *v.* MINERVA RIVERA ALEJANDRO, demandada y apelada, y CARLOS L. TORRES AGUAYO, demandado y apelante.

*Número:* AC-96-11          *Resuelto:* 30 de mayo de 1997

*Raúl Tirado, Hijo*, abogado de la parte recurrente.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

I

Los hechos que dan lugar a la controversia que hoy nos ocupa se remontan al 8 de diciembre de 1978, cuando el demandante apelado Carlos L. Torres Capeles contrajo matrimonio con la demandada apelada Minerva Rivera Alejandro. Durante el matrimonio procrearon dos (2) hijas, Carmen Iris y Evelyn Sujey, ambas de apellidos Torres Rivera. El 12 de mayo de 1988, el foro de instancia declaró disuelto el vínculo matrimonial y condenó a Torres Capeles a pagar una pensión alimentaria de ciento cincuenta dólares ($150) semanales para beneficio de sus hijas menores.

El 6 de abril de 1989 Torres Capeles y Rivera Alejandro le informaron al tribunal, mediante una moción suscrita por derecho propio, que estaban conviviendo. Solicitaron que se cancelara la obligación de pago de la pensión alimentaria otorgada a sus hijas menores de edad. El tribunal se dio por enterado.

No obstante, ya para el 1994 las relaciones entre éstos se habían deteriorado. El 23 de septiembre de 1994, Rivera Alejandro obtuvo una orden de protección al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 601 *et seq.*), mediante la cual se le ordenó a Torres Capeles desalojar la residencia que compartía con ella. Apenas unos días más tarde, el 28 de septiembre, Rivera Alejandro presentó una moción solicitando que se fijase como su hogar y el de sus hijas la residencia en la que hasta ese momento habían vivido, hasta que la menor de sus hijas llegase a la mayoría de edad. Alegó que aunque dicha residencia se compró con posterioridad al divorcio, se adquirió con dinero de la sociedad de bienes gananciales y/o de la comunidad de bienes compuesta por ella y Torres Capeles.

Solicitó, además, que a tenor con las condiciones entonces vigentes, condenase a Torres Capeles al pago de "una pensión alimenticia [sic] no menor de tres mil dólares ($3,000.00) mensuales para sus dos hijas menores de edad y una suma no menor de mil dólares ($1,000.00) para [ella]"; que fijase las relaciones paterno filiales, y que condenase a Torres Capeles al pago de las costas y honorarios de abogado.

El 4 de octubre de 1994, el tribunal reinstaló como pensión provisional los ciento cincuenta dólares ($150) semanales concedidos previamente como consecuencia del divorcio. El 5 de octubre, Torres Capeles presentó una moción de rebaja de pensión alimentaria. Alegó, en síntesis, que trabajaba con su padre en una compañía de arrastre,

que ganaba doscientos dólares ($200) semanales y que tenía deudas y responsabilidades que pagar. Sostuvo, además, que Rivera Alejandro y sus dos (2) hijas vivían en una casa que, aunque aparece a su nombre, pertenece a su padre, que es quien la paga. Conforme a lo anterior, adujo que solamente podía pagar setenta y cinco dólares ($75) semanales en concepto de pensión alimentaria a sus hijas.

Después de varios trámites procesales, incluyendo la presentación de dos (2) mociones de desacato por falta de pago de parte de la pensión alimentaria provisional y mociones relacionadas con el descubrimiento de prueba, el 25 de febrero de 1995 Rivera Alejandro interpuso una demanda de tercero contra el Sr. Carlos Torres Aguayo, el padre de Torres Capeles. En ésta alegó que en una deposición que se le tomó a Torres Capeles, éste expresó que "siempre ha sido empleado de su padre y desde hace catorce (14) años recib[ía] un sueldo semanal de trescientos cincuenta dólares ($350.00), hasta septiembre de 1994, que su sueldo baj[ó] a doscientos dólares ($200.00); y que su padre lo mantiene fuera de nómina, o sea que no le hace los descuentos legales de Seguro Social, Contribución sobre Ingresos y otros". Indicó que Torres Capeles administraba el negocio de camiones de su padre. Señaló, además, que desde que ella y Torres Capeles se casaron y mientras convivieron luego del divorcio, el padre de éste "controlaba el régimen económico de la familia". La posición social y económica de la familia, mientras convivieron luego del divorcio, era de clase media alta y los gastos fluctuaban, siendo la suma mínima promedio de tres mil dólares ($3,000) mensuales. También sostuvo que, según Torres Capeles, su padre "costeaba todos los gastos y obligaciones de la familia, que [él] no podía costear". Finalmente, aseveró "[q]ue como consecuencia de la Orden de Protección que emitió el Tribunal Municipal de Caguas, mediante la cual ordenó el desalojo del demandante del hogar conyugal, tanto [Torres Capeles como su padre] se negaron a continuar proveyendo

el nivel de vida económico al que habían acostumbrado a [Rivera Alejandro] y a las hijas habidas en el matrimonio".

Conforme las anteriores alegaciones, solicitó que fijase "la pensión alimenticia [sic] correspondiente en derecho y orden[ase] a [Torres Aguayo] a pagar subsidiariamente, ya sea mancomunada o solidariamente la pensión alimenticia [sic] que se le imponga [a Torres Capeles] para el sostenimiento de las hijas menores de edad habidas en el matrimonio".

El 28 de marzo de 1995, Torres Aguayo contestó la demanda de tercero, negando la mayor parte de las alegaciones. Planteó como defensas afirmativas que la demanda de tercero dejaba de exponer hechos que justificasen la concesión de un remedio y que los padres de las menores están capacitados física y mentalmente para proveerles alimentos a éstas.

El 4 de abril de 1995, el tercero demandado Torres Aguayo presentó una moción de desestimación. Solicitó, además, que ante la presentación de esta moción de desestimación se paralizase todo el descubrimiento de prueba en su contra. Con relación a la desestimación en sí, arguyó que de la demanda de tercero surgía claramente que no se estaba ante una situación de carencia absoluta de medios, sino ante una disminución de ellos, por lo que no se activaba el deber alimentario de él como abuelo de las menores. Concluyó que a su entender la demanda contra tercero no aducía causa de acción en su contra y, por lo tanto, procedía desestimarla.[1]

_____

[1] El 12 de abril de 1995, Rivera Alejandro presentó una moción solicitando inspeccionar y/o obtener fotocopia de todas y cada una de las solicitudes de los documentos relacionados con las siguientes deudas de Torres Capeles: Ford Motor Credit-TWA O11HNM6; Ford Motor Credit-TWAO 14 JJB3; Island Finance-5004035105, y R.G. Mortgage-001950000192600. El 20 de abril de 1995, el tribunal concedió lo solicitado. De los autos originales en el tribunal de instancia no aparece constancia alguna de que el demandante Torres Capeles haya dado cumplimiento a esta orden.

Ese mismo día, la examinadora de pensiones presentó su informe, recomendando que se fijase una pensión alimentaria provisional de trescientos cuarenta y cuatro dólares ($344) mensuales. Concluyó que esto representaba el cuarenta por ciento (40%) de los ingresos de Torres Capeles.

El 12 de abril de 1995, Rivera Alejandro presentó una moción oponiéndose a la desestimación de la demanda de tercero. Acompañó ésta con varios documentos: una copia de la deposición que le tomara a Torres Capeles; una copia del interrogatorio, requerimiento de admisiones y producción de documentos cursado al demandante Torres Capeles y la contestación de éste a los interrogatorios; copia de la planilla de contribución sobre ingresos rendida por el demandante Torres Capeles para el 1993 (Forma 482, Forma Larga); una certificación del First Federal Savings Bank de 26 de enero de 1995; copia del informe de Torres Capeles de 8 de marzo de 1995, preparado por Trans Union de Puerto Rico Inc., y una copia de un estado financiero de 31 de agosto de 1994, del tercero demandado Torres Aguayo, preparado por el Sr. Carlos A. Sánchez Parrilla, Contador Público Autorizado (C.P.A.).[2]

Luego de hacer un análisis de los documentos presentados, Rivera Alejandro alegó, entre otras cosas, *"que la prueba suministrada tiende a revelar que el verdadero dueño del negocio de camiones es el hijo, o sea, [Torres Capeles] ..."*. (Énfasis suplido.) Solicitó que se denegase la paralización del descubrimiento de prueba y la moción de desestimación y que, además, se dejase en suspenso la recomendación de la Examinadora de Pensiones Alimentarias para fijar pensión alimentaria provisional. El tercero demandado Torres Aguayo no replicó a esta moción ni presentó contradocumentos para controvertir los presentados por la demandante contra tercero.

Hemos examinado los documentos presentados con la moción en oposición a la moción de desestimación que constan en los autos originales del caso en el tribunal de instancia, y de éstos surgen los siguientes datos, entre otros: que para el 28 de marzo de 1989, el tercero deman-

---

[2] En este estado financiero se identifica a la persona sólo con su primer apellido: Carlos L. Torres. No se hace constar el número de seguro social. Sin embargo, en el escrito en oposición a la moción de desestimación la tercera demandante Rivera Alejandro señala que este informe se refiere al tercero demandado Torres Aguayo.

dado Torres Aguayo certificó que su hijo, el demandante Torres Capeles, se desempeñaba como conductor de equipo pesado y devengaba un sueldo de tres mil dólares ($3,000) mensuales; que en algún momento Torres Capeles expresó que trabajaba por cuenta propia y que no había rendido planilla de seguro social porque había operado con pérdidas; que en la planilla de contribuciones sobre ingresos rendida por el demandante Torres Capeles para el año 1993, éste hizo constar la suma de ciento veintitrés mil novecientos cuarenta y seis dólares ($123,946) como ingresos habidos en transacciones de negocio; que en el estado financiero del tercero demandado Torres Aguayo, preparado por el C.P.A. Carlos A. Sánchez Parrilla el 31 de agosto de 1994, se hace constar el valor neto (*net worth*) de las propiedades de Torres Aguayo en quinientos treinta y dos mil ochocientos dólares ($532,800); que la residencia donde actualmente viven la demandada Rivera Alejandro y sus dos (2) hijas aparece inscrita a nombre del demandante Torres Capeles, a pesar de que éste alega que le pertenece a su padre, el tercero demandado Torres Aguayo; y que lo mismo ocurre con los camiones del negocio de arrastre.(³)

Así las cosas y luego de una serie de mociones, en su mayoría relacionadas con el descubrimiento de prueba, el tribunal dictó sentencia final parcial el 15 de mayo de 1995. Ésta fue notificada el 29 de junio. El foro de instancia resolvió que la obligación alimentaria del tercero demandado Torres Aguayo, abuelo paterno de las menores, no surgía hasta que se diera una de dos (2) circunstancias: "(1) la incapacidad mental o física de los padres; o (2) insuficiencia económica de ellos. [Añadió que l]a última, según la doctrina, implica carencia absoluta de medios". Concluyó que procedía la desestimación de la demanda de

---

(³) La mayor parte de los documentos fueron requeridos con el propósito de obtener evidencia para demostrar que el demandante Torres Capeles es el verdadero dueño del negocio de camiones y tiene más ingresos que los que él alega tener. A pesar de las órdenes emitidas por el tribunal de instancia, el tercero demandado aparentemente no ha entregado todos los documentos requeridos.

tercero. El tribunal nada dijo sobre la materia no contenida en las alegaciones que fueron presentadas con la moción en oposición a la desestimación. Finalmente, impuso costas y honorarios por temeridad.(⁴)

El 19 de junio de 1995, Rivera Alejandro acudió en apelación al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Impugnó la determinación de desestimar la demanda contra tercero.(⁵)

El 30 de noviembre de 1995, el Tribunal de Circuito emitió una resolución mediante la cual revocó la sentencia parcial que desestimó la demanda de tercero presentada

---

(⁴) El 26 de junio de 1996 el tribunal de instancia emitió una resolución mediante la cual denegó la solicitud de desacato presentada por Rivera Alejandro contra Torres Capeles. También denegó la petición para que se le impusiera a Torres Capeles la responsabilidad del pago por las deudas de la casa.

Los últimos documentos que aparecen en los autos originales del Tribunal de Primera Instancia, Sala Superior de Caguas, son: una certificación de 5 de febrero de 1997 de la Administración para el Sustento de Menores, Unidad de Caguas, en la cual se certifica que a esa fecha Torres Capeles debía trece mil trescientos once dólares ($13,311), o sea, que desde que se dictó la orden el 28 de septiembre no había hecho un solo pago, y una recomendación de la Oficial Examinadora de Pensiones a la cual el tribunal le impartió su aprobación el 1ro de septiembre de 1995. De este último documento surge que se concedió la rebaja de pensión solicitada por Torres Capeles, fijando la pensión en cuatrocientos cincuenta y nueve dólares ($459) mensuales. No surge de los autos originales cuándo fue notificada esta determinación.

El Informe de la Oficial Examinadora y su recomendación, según aprobada por el tribunal de instancia, no forman parte de los autos originales del Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Estos documentos, sin embargo, fueron incluidos en el apéndice del recurso presentado ante nos.

(⁵) Los errores planteados en el recurso de apelación ante el Tribunal de Circuito son los siguientes:

"A. *Primer Error*:

"Erró el Tribunal de instancia al acoger la interpretación restictiva [sic] que le dió el tercero demandado a la obligación subsidiaria de alimentar a sus nietos, al alegar que solamente procede reclamar al abuelo cuando su hijo, [sic] el obligado primariamente a pagar pensión alimenticia [sic], carece de medios económicos en absoluto.

"B. *Segundo Error*:

"Erró el Tribunal de instancia al no considerar en lo absoluto nuestro planteamiento de que el tercero demandado debe ser parte indispensable en este pleito, para obligarlo a seguir satisfaciendo como parte de la pensión alimenticia [sic], un beneficio marginal que como parte de su empleo, le otorgaba a su hijo, en adición al salario; consistente en el pago de casi la mitad de los gastos y obligaciones de su hogar.

"C. *Tercer Error*:

"Erró el tribunal de instancia al imponerle a la apelante el pago de las costas y la suma de $300.00 en honorarios de abogado." (Énfasis en el original.)

contra Torres Aguayo, el abuelo de las menores.[6] Oportunamente, el tercero demandado solicitó la reconsideración. El 12 de enero de 1996, el Tribunal de Circuito denegó la reconsideración expresando que su determinación tenía "el propósito de que el Tribunal de Primera Instancia considere el ingreso del padre y de la madre, de haberlo, y de no ser suficiente, el de los abuelos materno y paterno. No tiene el propósito de excluir a la madre de las alimentistas de esa determinación que ha de efectuar el Tribunal de Primera Instancia en su día".

Por su parte, el Honorable Amadeo Murga emitió un voto particular en el cual expresó lo siguiente: "Entiendo que la obligación de los abuelos en cuanto a proveer alimentos a los nietos es de carácter subsidiario, no suplementario y sólo reservada para aquellos casos en los cuales la capacidad de los padres para proveer alimentos no alcance para satisfacer las necesidades básicas de las menores alimentistas."

Inconforme con la determinación del Tribunal de Circuito, el 31 de enero de 1996, el tercero demandado Torres Aguayo acudió ante nos mediante un escrito de apelación, planteando la comisión de los errores siguientes:

1. Erró el Tribunal de Circuito de Apelaciones al determinar que la obligación de alimentar de los abuelos es supletoria y no subsidiaria a la de los padres.

2. Erró el Tribunal de Circuito de Apelaciones al atender un asunto que a todas luces se tornó académico.

A tenor con lo dispuesto en el Art. 3.002(f) del Plan de Reorganización de la Rama Judicial Núm. 1a, de 28 de julio de 1994, Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(f)) y por entender, por las razones que más adelante se expresan, que la controversia ante nuestra consideración no se ha tornado académica, damos curso a la apelación y pasamos de inmediato a resolverla.

---

[6] El Juez del Tribunal de Circuito, Hon. Antonio J. Amadeo Murga, disintió.

## II

En el caso de autos, el tercero demandado presentó una moción de desestimación basada en que la demanda contra tercero no aducía hechos que justificasen la concesión de un remedio. La tercera demandante Rivera Alejandro se opuso y acompañó con su moción en oposición una serie de documentos que constituyen materia no contenida en la alegación impugnada. El tribunal no la excluyó ni específicamente convirtió la moción de desestimación en una de sentencia sumaria, según dispone la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración. Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria. 5A *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1366 (1990).

En el caso ante nuestra consideración, el tribunal de instancia nada indicó con respecto a la materia nueva incluida con la oposición a la moción de desestimación. Un

análisis de estos documentos refleja, con meridiana claridad, que existen serias dudas sobre quién es el dueño tanto del negocio de camiones como de una serie de bienes que aparecen inscritos a nombre del demandante Torres Capeles. Esta no es una controversia que puede resolverse sumariamente. Con relación a las determinaciones cruciales de hechos sobre a quién pertenecen los bienes y cuántos ingresos realmente devenga el padre demandante Torres Capeles, luego de un adecuado descubrimiento de prueba, el tribunal tendrá que celebrar una vista en los méritos y dirimir credibilidad.

Por lo tanto, no es un caso en que procede la desestimación de la demanda contra tercero por no aducir esta reclamación hechos que justifiquen la concesión de un remedio. A pesar de que la postura original de la reclamación de tercero contra el abuelo, Torres Aguayo, fue exigirle responsabilidad alimentaria suplementaria, de la moción en oposición a la desestimación y los documentos que la acompañaron surge que se ha trabado una controversia que incide sobre el eje central de la petición alimentaria, no ya contra el abuelo tercero demandado, Torres Aguayo, sino contra el padre demandante, Torres Capeles. Para poder resolver cuál es la responsabilidad alimentaria del padre Torres Capeles, se precisa una determinación previa sobre la titularidad de los bienes. Un examen de los autos originales del tribunal de instancia refleja, con meridiana claridad, que existe duda y controversia real, no sólo sobre a quién pertenecen los bienes, sino también sobre cuáles son los verdaderos ingresos del padre demandante Torres Capeles. La solución de estas controversias requiere que el abuelo, el tercero demandado Torres Aguayo, sea parte en el pleito, pues sus derechos propietarios podrían quedar afectados. También se hace necesario que el foro de instancia permita un amplio descubrimiento de prueba sobre este particular. Por lo tanto, no procede la desestimación de la demanda contra tercero. El abuelo, demandado contra ter-

cero, es parte indispensable para que se pueda dilucidar la reclamación alimentaria contra el padre demandante Torres Capeles. Debemos tener presente que los tribunales conceden lo que procede en derecho y no lo que se les solicita. El hecho de que las partes se equivoquen con respecto al derecho aplicable o a los fundamentos para su petición, en nada afecta el deber de los tribunales de conceder aquello a lo cual tengan derecho. Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Soto López v. Colón*, 143 D.P.R. 282 (1997). Con relación a la concesión de pensión alimentaria a menores, en *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 73 (1987), expresamos sobre este particular que, "cuando de hacer justicia se trata, especialmente en áreas de gran interés público, no hay moldes técnicos que limiten o aprisionen los remedios justos".

A tenor con lo antes expuesto, tanto el Tribunal de Circuito como el Tribunal de Primera Instancia se equivocaron, aunque por distintas razones, al resolver el planteamiento de la desestimación de la demanda contra tercero. Lo que procede en este caso es denegar la moción de desestimación presentada por el tercero demandado Torres Aguayo y devolver el caso al foro de instancia para que se continúe con el descubrimiento de prueba. Luego de concluido éste, se deberá celebrar una vista en los méritos para determinar a quién realmente pertenecen los bienes que son el eje central de la controversia sobre la fijación de pensión alimentaria y cuáles son los verdaderos ingresos del padre alimentante.

Veamos cuál es el estado procesal actual del caso en el foro de instancia.

III

A tenor con la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en lo pertinente:

Cuando un pleito comprenda más de una reclamación, ya sea

mediante demanda, reconvención, demanda contra coparte o demanda contra tercero ... el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones ... sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.

Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las Reglas 47, 48 y 53. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 35 (1982); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1979, Vol. II, Cap. VII, págs. 231–234.

Esto fue precisamente lo que ocurrió en el caso de autos al dictar el foro de instancia, el 15 de mayo de 1995, sentencia parcial desestimando la demanda contra tercero.

De esta sentencia parcial, el 19 de junio de 1995, el demandado contra tercero apeló al Tribunal de Circuito, conforme disponía el Art. 4.002(a), 4 L.P.R.A. sec. 22k(a). La presentación del escrito de apelación suspendió los procedimientos ante el Tribunal de Primera Instancia. Sólo podía continuar cualquier cuestión no comprendida en la apelación. Art. 4.002(f), 4 L.P.R.A. sec. 22k(f). El 30 de noviembre de 1995 el Tribunal de Circuito emitió una sentencia que equivocadamente tituló Resolución, mediante la cual revocó la sentencia parcial emitida por el Tribunal de Primera Instancia.[7] De esta sentencia el tercero demandado Torres Aguayo apeló al Tribunal Supremo. Art. 3.002(f) de la Ley de la Judicatura de Puerto Rico de 1994, *supra*. Al igual que ocurrió en el Tribunal de Circuito, la presentación del escrito de apelación suspendió los procedimientos en dicho foro y, por ende, también en el foro de

---

[7] Realmente se trataba de una sentencia, ya que el Tribunal de Circuito dispuso de la totalidad del asunto planteado en el recurso de apelación al revocar la sentencia parcial apelada. Cabe señalar, además, que por proceder como cuestión de derecho una apelación interpuesta en tiempo y de acuerdo con las reglas procesales, ésta tiene que ser resuelta mediante sentencia no por resolución.

instancia. En estos foros sólo podían continuar las cuestiones no comprendidas en la apelación, o sea, que no afectasen la disposición que finalmente se hiciese del asunto. Art. 3.002(*l*), 4 L.P.R.A. sec. 22i(j).

De lo discutido en la Parte II de esta opinión se desprende con meridiana claridad que, comprendidas dentro de ambas apelaciones e inmersas en las cuestiones planteadas, están las determinaciones sobre a quién pertenece tanto el negocio de arrastre que genera los ingresos de los cuales se pretende que se pague la pensión alimentaria como la propiedad que constituye actualmente la residencia de la demandada y sus hijas, y cuánto es el ingreso que verdaderamente devenga Torres Capeles. Para resolver estas controversias, el tercero demandado Torres Aguayo es una parte indispensable, pues sus derechos propietarios podrían quedar afectados.

Indiscutiblemente, bajo estas circunstancias, el foro de instancia carecía de jurisdicción para resolver definitivamente la moción de rebaja de pensión alimentaria o hacer cualquier determinación final sobre la pensión que procedía conceder. Cualquier determinación sobre estos asuntos depende y queda afectada por el resultado de la apelación que hoy resolvemos. Elementos esenciales para la determinación final de la pensión alimentaria a concederse están comprendidos en las cuestiones planteadas en apelación. Una vez presentado un escrito de apelación ante este Tribunal, tanto el Tribunal de Circuito como el Tribunal de Primera Instancia carecían de jurisdicción para continuar los procedimientos con relación a cuestiones comprendidas en la apelación. Sus determinaciones no pueden convertir nuestro dictamen en uno inefectivo. Por lo tanto, las determinaciones del foro de instancia sobre la solicitud de rebaja de pensión alimentaria y fijación de pensión son de naturaleza provisional. Sin una vista en los méritos, no se puede dilucidar la cuestión crucial sobre a quién pertenecen los bienes.

Por la razones antes expuestas, y dándose la revisión contra la sentencia y no contra sus fundamentos, *se dictará sentencia modificando la emitida por el Tribunal de Circuito y devolviendo el caso al foro de instancia para que continuén los procedimientos de forma compatible con lo aquí resuelto.*

Los Jueces Asociados Señores Negrón García y Hernández Denton concurrieron con el resultado sin opiniones escritas. El Juez Asociado Señor Rebollo López no interviene.