ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| WILFREDO RIVERA RIVERA,<br><br>Apelante,<br><br>v.<br><br>JOSÉ WILFREDO RIVERA VÁZQUEZ, FÉLIX WILFREDO RIVERA VÁZQUEZ, WILMARIE RIVERA VÁZQUEZ,<br><br>Apelada. | TA2025AP00441 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Caguas.<br><br>Civil núm.: CY2024CV00129.<br><br>Sobre: división o liquidación de la comunidad de bienes hereditaria. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 20 de noviembre de 2025.

El 14 de octubre de 2025, el señor Wilfredo Rivera Rivera (apelante o señor Rivera) instó este recurso de apelación, mediante el cual solicita la revocación de la *Sentencia* emitida y notificada el 15 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante dicha determinación, el foro primario declaró con lugar las mociones intituladas *Moción solicitando desestimación de la demanda enmendada* y la *Moción Solicitando Reconsideración* presentadas por los señores José Wilfredo Rivera Vázquez, Félix Wilfredo Rivera Vázquez y Wilmarie Rivera Vázquez (parte apelada o apelados).

El señor Rivera solicitó la reconsideración de la referida *Sentencia*; sin embargo, la misma fue denegada mediante la *Orden* notificada de 15 de septiembre de 2025[1].

Por los los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

---

[1] Entrada 1 del *Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones* (SUMAC TA), apéndice 31.

I

El **9 de agosto de 2020**, el señor Wilfredo Rivera Meléndez (el causante) falleció intestado, dejando como herederos únicos y universales a sus cuatro (4) hijos: Wilfredo Rivera Rivera, José Wilfredo Rivera Vázquez, Félix Wilfredo Rivera Vázquez y Wilmarie Rivera Vázquez[2].

El **12 de septiembre de 2024**, el señor Rivera presentó una demanda contra sus tres (3) hermanos. En su escrito, alegó que, el **25 de octubre de 2021**, otorgó ante el abogado-notario, Lcdo. Juan Antonio Hernández Rivera, la Escritura Número Doscientos Uno (201) sobre *Cesión de Derechos y Acciones Hereditarias*[3] a favor de los apelados. En dicha escritura, manifestó haber **cedido y traspasado su participación en los bienes muebles e inmuebles pertenecientes a la comunidad hereditaria a favor de los restantes herederos, por el precio convenido de cien mil dólares ($100.000.00)**. Planteó que, a pesar de lo convenido, a la fecha de la presentación de la demanda, no había recibido pago total o parcial alguno por dicho concepto[4]. Por ello, solicitó al foro primario que ordenara la realización del inventario y avalúo de los bienes que componían la herencia del causante, así como el pago de su participación en ella, según lo pactado en la referida escritura[5].

El **31 de enero de 2025**, los apelados solicitaron la desestimación de la demanda y adjuntaron copia de la Escritura Número Doscientos Uno (201) (Escritura 201)[6]. Entre las cláusulas contenidas en dicho instrumento público, se destaca la siguiente:

.        .        .        .        .        .        .        .

----**SEGUNDO**: Teniendo ahora <u>convenida la cesión del derecho hereditario o participación abstracta e indeterminada en la totalidad de la herencia del causante Wilfredo Rivera Meléndez</u> a favor de los comparecientes de la Segunda Parte, **José Wilfredo Rivera Vázquez, Félix Wilfredo**

---

[2] *Resolución de Declaratoria de Herederos* en el caso civil núm. BY2021CV00242. Entrada 1 de SUMAC TA, apéndice 1, anejo 1.

[3] Entrada 1 de SUMAC TA, apéndice 8, anejo 1.

[4] *Íd.*, apéndice 1.

[5] *Íd.*

[6] *Íd.,* apéndice 8, anejo 1.

**Rivera Vázquez y Wilmarie Rivera Vázquez**, el compareciente de la Primera Parte, **Wilfredo Rivera Rivera**, cede y traspasa en abstracto su participación en los inmuebles mencionados en el párrafo Primero de este documento **por el convenido precio de CIEN MIL DÓLARES ($100,000.00),** quienes adquieren en partes iguales. Dicha suma total manifiesta haberla recibido Wilfredo Rivera Rivera en este acto, en moneda legal y monetaria, por lo cual otorga formal y eficaz carta de pago, obligándose a evicción y saneamiento de acuerdo a derecho. Para efectos del Registro de la Propiedad, a cada inmueble le corresponde la cantidad de cincuenta mil dólares ($50,000.00)[7].

. . . . . . . . .

----**QUINTO**: Wilfredo Rivera Rivera reconoce que con el pago total de los Cien Mil Dólares ($100,000.00) mencionados en el párrafo Segundo de este Instrumento renuncia a toda participación de la herencia intestada al fallecimiento del causante Don Wilfredo Rivera Meléndez y al remanente de los bienes que componen ésta. Del mismo modo, éste acuerda firmar cualquier documento accesorio y necesario relacionado a cualquier asunto relacionado a dicha herencia, pudiendo los otros herederos radicar cualquier acción que proceda en derecho para lograr dicho cumplimiento y/o resarcir cualquier daño sufrido.

. . . . . . . . .

----**SÉPTIMO**: Con el otorgamiento de esta escritura, el compareciente Wilfredo Rivera Rivera cesará de ser miembro de la sucesión de Wilfredo Rivera Meléndez de manera irrevocable por lo que en este Acto se le releva de toda responsabilidad o causa de acción en referencia al caudal relicto del causante.[8]

(Negrillas en el original; subrayado nuestro).

En virtud de lo anterior, la parte apelada sostuvo que el pago reclamado por el señor Rivera ya se había efectuado al momento de la firma de la referida escritura y que, mediante dicho acto, este había renunciado expresamente a toda participación en la herencia de su padre[9].

El **4 de marzo de 2025**, el apelante presentó una demanda enmendada en la cual sostuvo, **por primera vez**, que la Escritura 201 había sido firmada en ausencia del notario autorizante y que, por el contrario, su

---

[7] Nótese que los herederos del causante eran cuatro (4) hermanos. En la Escritura 201, suscrita el **25 de octubre de 2021**, se describieron dos inmuebles; a decir, un solar en el Barrio Tomás de Castro en Caguas, en el que enclavaba una casa de concreto dedicada a vivienda; y, un solar urbano en la Urb. Monte Claro de Bayamón, en el que enclavaba una casa de concreto. Posteriormente, un tercer inmueble fue adjudicado por todos los hermanos, **incluido el apelante**, a la hermana, señora Wilmarie Rivera Vázquez, mediante la **Escritura Pública Núm. 101 de 5 de mayo de 2022**, suscrita ante el mismo abogado-notario, Lcdo. Juan Antonio Hernández Rivera. Ello fue alegado y admitido por el apelante en su demanda y en su demanda enmendada (alegaciones núm. 4-6).

[8] Entrada 1 de SUMAC TA, apéndice 8, anejo 1, pág. 3.

[9] *Íd.,* apéndice 8.

hermano "Fredo" le había citado a su negocio y le había hecho firmar el borrador de la escritura. En consecuencia, alegó que el abogado-notario no podía dar fe de la comparecencia ni del conocimiento de los otorgantes, ni tampoco de que se le hubiese entregado al apelante la cantidad de cien mil dólares ($100,000.00) en pago de su haber hereditario. Adujo, además, que el negocio jurídico fue producto de fraude, por lo que solicitó al foro primario que declarase la nulidad de la Escritura 201, ordenara el avalúo, la liquidación y partición de la comunidad hereditaria, y condenara a los demandados al pago de veinticinco mil dólares ($25,000.00) por concepto de sus daños, sufrimientos y angustias metales[10].

El **8 de abril de 2025**, la parte apelada solicitó la desestimación de la demanda enmendada. En su escrito, reiteró que, mediante su firma[11], el señor Rivera había reconocido que había recibido los cien mil dólares ($100,000.00) adeudados. Alegó, además, que, aun si se acogieran los planteamientos de la parte apelante, la escritura pública conservaría su validez como un acuerdo privado, toda vez que había sido suscrita por el propio apelante[12].

Posteriormente, el **11 de junio de 2025**, notificada el 16 de junio de 2025, el tribunal emitió una *Resolución Interlocutoria*, en la que denegó escuetamente la moción de desestimación de los apelados y les ordenó presentar su alegación responsiva[13].

El **27 de junio de 2025**, los apelados solicitaron la reconsideración de la denegatoria de desestimación. En esta ocasión, adjuntaron copia de una *Declaración Jurada* suscrita por el abogado-notario, Lcdo. Juan Antonio Hernández Rivera, quien había otorgado la Escritura 201, y quien dio fe, bajo juramento, de que la escritura había sido otorgada en su oficina, que los otorgantes la habían leído y firmado ante sí, de manera

---

[10] Entrada 1 de SUMAC TA, apéndice 14.

[11] Examinada la copia de la Escritura 201, surge, también, que la misma fue inicialada por todos los comparecientes en el margen izquierdo de cada una de sus páginas.

[12] Entrada 1 de SUMAC TA, apéndice 16.

[13] *Íd.*, apéndice 20.

simultánea[14]. Es decir, el notario acreditó bajo juramento que la Escritura 201 había sido otorgada cumpliendo con todas las formalidades exigidas por la ley[15].

Luego de que el apelante presentara su oposición, el **15 de agosto de 2025**, el foro primario emitió y notificó la *Sentencia* objeto del presente recurso. En primer lugar, el tribunal acogió la solicitud de reconsideración presentada por los apelados el 27 de junio de 2025, por lo que declaró con lugar la solicitud de desestimación de la demanda enmendada y desestimó el pleito con perjuicio[16].

Inconforme, el 31 de agosto de 2025, el señor Rivera presentó una moción de reconsideración[17], la cual fue declarada sin lugar mediante la orden notificada el 15 de septiembre de 2025[18].

Aún inconforme, el señor Rivera instó este recurso y formuló el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la solicitud de reconsideración a sentencia emitida que desestima el pleito al amparo de la Regla 10.2(5) de las de Procedimiento Civil, tras no considerar la existencia de alegaciones por dolo y los hechos incontrovertidos que demuestran la existencia de una controversia legítima que requiere la concesión de un remedio.

El 13 de noviembre de 2025, la parte apelada presentó su oposición al recurso de apelación[19].

Examinados los escritos de las partes comparecientes, resolvemos.

II

A

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las

---

[14] Entrada 1 de SUMAC TA, apéndice 21.

[15] *Íd.*, apéndice 21, anejo 1.

[16] *Íd.*, apéndice 27.

[17] *Íd.*, apéndice 16.

[18] *Íd.*, apéndice 28.

[19] Entrada 3 de SUMAC TA.

alegaciones en su contra. A tales efectos, la referida regla reza como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; (6) dejar de acumular una parte indispensable.

(Énfasis nuestro).

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). Por tanto, la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Resulta pertinente resaltar que la citada norma procesal establece que, si en una moción de desestimación en la que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de las de Procedimiento Civil hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción conforme a dicha regla.

Sobre ello, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla [10.2 de las de Procedimiento Civil], puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. **El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña**. **Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración**. Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria. *5A Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1366 (1990).

*Torres Capeles v. Rivera Alejandro*, 143 DPR 300, 309 (1997). (Énfasis suplido).

B

Las fuentes de las obligaciones son la ley, los contratos, los cuasicontratos, los actos ilícitos, y los actos u omisiones en que intervenga culpa o negligencia. Art. 1063 del Código Civil de Puerto Rico de 2020[20], 31 LPRA sec. 8984. En cuanto a los contratos en particular, el Art. 1233 del Código Civil de Puerto Rico de 2020 dispone que lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley. 31 LPRA sec. 9754. Consecuentemente, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014).

Por tanto, los contratos quedan perfeccionados desde que las partes contratantes manifiestan su **consentimiento** sobre el **objeto** y la **causa**, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código

---

[20] El Código Civil de 2020 entró en vigor el 28 de noviembre de 2020; el causante falleció el 9 de agosto de 2020; es decir, previo a que entrase en vigor el nuevo Código. No obstante, este caso no trata de los derechos a la herencia de quien ha fallecido (Art. 1816 del Código Civil de 2020, 31 LPRA sec. 11721), sino al contrato suscrito entre las partes litigantes en el 2021. Así pues, en adelante, nos referiremos a las disposiciones pertinentes del Código Civil de 2020.

Civil de Puerto Rico de 2020, 31 LPRA sec. 9771. Así pues, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se derivan del mismo, conforme a la buena fe, al uso y a la ley. *Álvarez v. Rivera*, 165 DPR 1, 18 (2005). Véase, además, Art. 269 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6131.

Nuestro ordenamiento jurídico también regula la forma en que los contratos pueden constar, distinguiendo entre instrumentos públicos y privados. En este contexto, el Art. 280, 31 LPRA sec. 6172, dispone que un instrumento público que no cumpla con los requisitos exigidos para ser considerado público podrá valer como instrumento privado si está firmado por los otorgantes, lo que refleja la denominada teoría de conversión. Según esta doctrina, si concurren los elementos esenciales del contrato - consentimiento, objeto y causa - el negocio jurídico puede producir efectos entre las partes, aun cuando no se haya otorgado en la forma pública requerida. *Sucn. Santos v. Registrador*, 108 DPR 831, 843 (1979).

Por su parte, el Art. 281 del Código Civil define el instrumento privado como aquel que contiene una manifestación escrita y firmada de la voluntad de su otorgante. Añade, además, que el reconocimiento de la firma implica el reconocimiento del contenido del documento. 31 LPRA sec. 6173.

El instrumento público se encuentra definido en el Art. 279 del Código Civil, que lo describe como aquel autorizado por notario o funcionario público competente en el ejercicio de su función, con las formalidades que exige la ley. 31 LPRA sec. 6171.

A su vez, en virtud del principio de la fe pública notarial, consagrado en el Art. 2 de la *Ley Notarial de Puerto Rico*, Ley Núm. 75 de 2 de julio de 1987, según enmendada, el ordenamiento jurídico puertorriqueño reconoce al notario como un profesional del Derecho investido de autoridad pública para dotar de autenticidad y eficacia probatoria los actos y negocios jurídicos que ante él se otorguen. 4 LPRA sec. 2002. Es decir, el Estado ha delegado en el notario la facultad de que todo lo que exprese en los

documentos bajo su firma, signo, sello y rúbrica se tenga por cierto, sin necesidad de prueba adicional. C. R. Urrutia De Basora y L. M. Negrón Portillo, *Curso de Derecho Notarial Puertorriqueño*, 3ra ed., 2002, pág. 10.

Así, cuando el notario estampa su firma, signo, sello y rúbrica en un documento, compromete su título y garantiza que los hechos consignados ocurrieron tal como se describen en el instrumento. C. R. Urrutia De Basora y L. M. Negrón Portillo, *op. cit.*, pág. 11. En efecto, la intervención notarial aporta credibilidad, autenticidad y certeza jurídica a todo documento en el que participa. *Op. cit.*, pág. 10. Al autorizar un documento, el notario da fe de que cumple con todas las formalidades de ley, que es legal y verdadero, y que se trata de una transacción válida y legítima. *In re González Maldonado*, 152 DPR 871, 895 (2000). Esta dación de fe notarial goza de una presunción *juris tantum* a favor de la veracidad y legalidad del instrumento notarial, la cual prevalece en ausencia de evidencia en contrario y desplaza el peso de la prueba hacia quien impugna su contenido. *Íd.*

C

En cuanto a los contratos, "[l]a teoría contractual que rige en nuestra jurisdicción dispone el principio de contratación o autonomía de la voluntad". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011). De acuerdo con el Art. 285 del Código Civil, los vicios de la voluntad son el error, el dolo, la violencia y la intimidación. 31 LPRA sec. 6191. **La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega**. Art. 286 del Código Civil, 31 LPRA sec. 6192.

En cuanto al dolo, el Tribunal Supremo de Puerto Rico ha expresado que este debe entenderse como:

> […] todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él.

*Colón v. Promo Motor Imports, Inc.,* 144 DPR 659, 666 (1997).

En nuestro ordenamiento jurídico el dolo no se presume, pero ello no significa necesariamente que tenga que probarse directamente. Puede establecerse mediante inferencia o por evidencia circunstancial. *Colón v. Promo Motor Imports, Inc.*, 144 DPR, a las págs. 668-669. Debemos recalcar que, cuando el dolo en la formación del contrato sea causante o incidental, corresponde a quien reclama dicha conducta dolosa la responsabilidad de así probarlo. *Íd.*, a la pág. 669. Según la jurisprudencia, el dolo causante es aquel que influye directamente en la decisión de una persona de celebrar un contrato, de modo que, de no haber existido tal dolo, el contrato no se habría perfeccionado. En otras palabras, se trata del dolo que determina y vicia el consentimiento de la parte afectada. *Íd.*, a las págs. 666-668.

D

La sucesión por causa de muerte constituye la transmisión de los derechos y de las obligaciones del causante que no se extinguen por su fallecimiento. Art. 1546 del Código Civil, 31 LPRA sec. 10911. Por tanto, la apertura de la sucesión ocurre al momento de la muerte del causante. Art. 1547 del Código Civil, 31 LPRA sec. 10912. En ese instante, cuando concurren varios llamados a la herencia, surge una comunidad hereditaria en la cual los derechos de cada heredero se expresan en cuotas abstractas. Art. 1599 del Código Civil, 31 LPRA sec. 11071. Se ha reconocido que, mientras la partición no se efectúe, los herederos no tienen un derecho concreto sobre los bienes hereditarios, sino un derecho en el complejo hereditario. M. Garay Aubán (Compilador), *Código Civil, Sucesiones,* 2da ed., Ediciones SITUM, 2021, Tomo 5, pág.87; citando a J. Castán Tobeñas, *Derecho Civil Español Común y Floral*, Tomo VI, Vol.5, 8va ed., 1978, pág. 295.

En consonancia con lo anterior, el Art. 1604 del Código Civil establece que el heredero puede disponer de su cuota en la herencia sin necesidad del consentimiento de los demás coherederos, mientras que solo mediante el consentimiento unánime de todos los herederos pueden

enajenarse bienes específicos pertenecientes a la comunidad. 31 LPRA sec. 11076. Por su parte, el heredero, en calidad de comunero, posee los derechos inherentes a la plena propiedad de su cuota, incluidos los frutos que le correspondan, y puede enajenarla, cederla, gravarla o sustituir a otro en su aprovechamiento, salvo que se trate de derechos personalísimos. Art. 845 del Código Civil, 31 LPRA sec. 8207.

Nuestra jurisprudencia ha reconocido que, durante la existencia de la comunidad hereditaria, el heredero puede enajenar su cuota abstracta en la herencia, sin que ello requiera la previa partición del caudal común. *Burgos v. Hernández*, 54 DPR 37, 40 (1938). En armonía con ello, el derecho vigente dispone que el heredero puede ceder sus derechos hereditarios, **siempre que dicha cesión conste en instrumento público o privado para efectos probatorios**, a fin de garantizar la formalidad necesaria para su validez y su oponibilidad frente a terceros. Art. 1245 del Código Civil, 31 LPRA sec. 9792. Por su parte, el cedente o enajenante sustituye, en todo o en parte, al cesionario en los derechos que le correspondían dentro de la comunidad, conservando, además, el derecho a intervenir en el proceso de partición en los términos que le corresponda conforme al negocio jurídico celebrado. *Burgos v. Hernández*, 54 DPR, a la pág. 40.

III

En el presente recurso, nos corresponde determinar si el Tribunal de Primera Instancia erró al desestimar, con perjuicio, la demanda instada por el señor Rivera en contra de sus hermanos al amparo de la Regla 10.2(5) de Procedimiento Civil.

El apelante sostiene que el foro primario no consideró las alegaciones de dolo ni los hechos incontrovertidos que, a su juicio, demostraban la existencia de una controversia legítima. No le asiste la razón.

Como punto de partida, recordemos que la desestimación de una demanda procede cuando esta no expone una reclamación que justifique

la concesión de un remedio. En el caso de autos, el señor Rivera aduce que la Escritura 201 es nula, debido que adolece de uno de los vicios del consentimiento; a decir, el dolo. Además, plantea que la Escritura 201 es inválida, en cuanto no fue otorgada conforme a derecho o en ausencia del notario autorizante.

Conviene destacar que el señor Rivera fue declarado como uno de los herederos universales del causante - el señor Wilfredo Rivera Meléndez - mediante la resolución judicial a esos efectos. En consecuencia, su derecho hereditario no recaía sobre bienes determinados del caudal, sino sobre una cuota abstracta dentro de la masa hereditaria. Según surge del expediente, el señor Rivera cedió dicha cuota abstracta a los demás coherederos, renunciando a toda participación en la herencia, mediante la Escritura 201; ello, a cambio del pago de cien mil dólares ($100,000.00).

Adicionalmente, el apelante plantea que su consentimiento estuvo viciado por dolo al momento de otorgar la referida escritura. Para evaluar tal planteamiento, corresponde considerar, entre otros factores, la preparación académica del otorgante, su condición social y económica, las relaciones personales que mantiene y su capacidad para llevar a cabo negocios jurídicos como el de autos. *Colón v. Promo Motor Imports, Inc.*, 144 DPR, a la pág. 669.

Ni de las alegaciones de la demanda, ni de la demanda enmendada, surge indicio alguno que nos permita inferir que el señor Rivera fue inducido mediante dolo a ceder su participación en el caudal hereditario de su fenecido padre. Por el contrario, la redacción del instrumento público es clara, y su contenido refleja la voluntad libre y consciente del otorgante de ceder sus derechos hereditarios a cambio del pago convenido, el cual - según consta en la propia escritura y sin que se haya ofrecido testimonio o prueba en contrario - se efectuó al momento del otorgamiento.

De otra parte, el apelante alega que la escritura no es válida porque no fue firmada en presencia del notario autorizante. No obstante, la parte apelada adjuntó a su solicitud de desestimación la *Declaración Jurada*

(Affidávit Núm. 8492) suscrita por el abogado-notario, Lcdo. Juan Antonio Hernández Rivera, en la cual este afirmó que todos los otorgantes comparecieron ante él, leyeron y firmaron el instrumento de forma simultánea, cumpliendo así con las formalidades legales requeridas para su otorgamiento.

Aun si se acogiera la premisa del apelante de que el instrumento público fue firmado en ausencia del notario, dicha irregularidad formal no bastaría, por sí sola, para privar de validez el negocio jurídico. Nuestro ordenamiento reconoce que la cesión de derechos hereditarios puede realizarse mediante instrumento público o privado. En consecuencia, el acto conservaría plena eficacia como contrato privado, toda vez que el señor Rivera prestó su consentimiento, con capacidad para ello, sobre un objeto cierto y con causa lícita. La cesión reflejó de manera inequívoca su voluntad de traspasar su participación indivisa en la herencia, lo que demuestra que la obligación asumida era válida y exigible.

Debemos apuntar, además, que no fue sino hasta que los apelados presentaron su primera solicitud de desestimación, que el señor Rivera enmendó su demanda para incluir una descarnada alegación de que uno de sus hermanos lo había citado a su negocio para allí firmar el documento, que luego se convirtió en la Escritura 201. Esta alegación se incluyó con el fin de apoyar la propuesta del apelante a los efectos de que la Escritura 201 no había cumplido con las formalidades de ley.

Con excepción de esa alegación, ni de la demanda ni de su enmienda surgen hechos particulares que nos permitan concluir que hubieran mediado las maquinaciones insidiosas que podrían configurar el dolo en la contratación. Por lo tanto, nos vemos forzados a concluir que el señor Rivera, aun analizando las alegaciones de su reclamación de la manera más favorable para él, no nos puso en posición de inferir que pudo haber mediado dolo.

Por el contrario, las alegaciones de la demanda y los documentos obrantes en autos confirman que la cesión de derechos hereditarios constituyó un contrato válido y eficaz entre los cuatro (4) hermanos.

IV

Evaluados los autos de este caso a la luz del derecho aplicable, **confirmamos** la *Sentencia* emitida y notificada el 15 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones